Horace WARNER, Jr.,
Petitioner-Appellant,

v.

J. Paul FORD, Warden,
Respondent-Appellee.

No. 84–8341.

United States Court of Appeals,
Eleventh Circuit.

Feb. 8, 1985.

Michael K. McIntyre (court-appointed), Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Paula K. Smith, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before RONEY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

RONEY, Circuit Judge:

The sole issue on this appeal from the district court's denial of habeas corpus relief to Horace Warner, Jr. is whether War-

ner was denied effective assistance of counsel at trial. Warner's counsel did virtually nothing at his state trial when Warner was convicted of three counts of theft and a Georgia weapons violation. Nevertheless, we conclude that Warner's counsel's performance was not so ineffective as to raise a legal presumption that Warner was prejudiced, and that the district court correctly held that he has not shown prejudice. We affirm.

Warner was caught "red-handed" in the process of robbing an automated teller. In the early morning hours of July 20, 1979, two plain-clothed police officers observed Warner standing at an automated teller machine in downtown Atlanta. A green Nova was parked at curb side across the street with the engine running, the lights on, and the hood up. Warner's codefendant, Calvin Jackson, was standing in front of the car. Another codefendant, Morris Myrick, was seated behind the wheel. At the approach of passing automobiles, Jackson would signal Warner who would then step back from the teller machine until traffic passed. The officers saw approximately six such hand signals over a period of 30 minutes.

Jackson eventually observed the officers. He signaled Warner and both men got into the car and drove away. The car was followed by Atlanta police officers in an unmarked van and there ensued a high-speed chase through the streets of downtown Atlanta. During the chase, codefendant Jackson threw some items out of the car window and jumped out of the car. He was subsequently apprehended.

The chase ended when the two remaining codefendants wrecked the car. Myrick was trapped in the car and was arrested. Warner escaped on foot. The officers found a sawed-off shotgun with altered serial numbers in the trunk of the car and found stolen driver's licenses, credit cards and checks in the main compartment. The officers later recovered the items thrown from the moving car: social security cards in the names of T. Jane Bishop and Betty Hamlet. Returning to the automated teller, police recovered $1,050 worth of receipts for money withdrawn from the machine between 2:40 a.m. and 3:06 a.m.

With the help of codefendants Jackson and Myrick, the police soon apprehended Warner, in possession of $1,023. Warner thereafter admitted that he knew the credit cards were stolen, that he made the transactions at the automated teller with a stolen credit card, and that he knew a shotgun, which he believed to be stolen, was in the trunk of the green Nova.

Warner was indicted on four counts: theft by taking, two counts of credit card theft, and a violation of the Georgia Firearms and Weapons Act. Daniel Kane, a Fulton County Public Defender, was appointed to represent him. Kane conducted limited pretrial discovery. Thereafter, he and Warner decided to enter a plea of guilty and accept a 7-year prison sentence recommended by the state. The recommended plea, however, was rejected by the trial court on October 16, 1979. Trial for Warner and his two codefendants was scheduled for the following day. The next morning Kane again requested that the trial court accept his client's plea. The court refused and trial proceeded.

Warner's counsel, Kane, played an inactive role at the trial. He did not participate in *voir dire*, exercised no peremptory challenges, and made no pretrial motions. He made no opening statement and, during the presentation of the state's case in chief, asked not a single question on cross-examination. He did nothing to challenge Myrick's and Jackson's defense strategy of blaming his client. He failed to ask any questions or present any evidence concerning the voluntariness of the petitioner's statement during the pre-trial hearing. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Kane offered no objection to any evidence offered against his client on any of the four counts. He presented no character evidence or any other type of evidence on petitioner's behalf and made no closing argument to the jury. He requested no jury instructions,

nor did he request that the jury be polled upon the return of the verdict.

Kane, on behalf of Warner, moved for a directed verdict on the firearms count of the indictment, moved for a mistrial three times, recommended that Warner not take the stand when called by a codefendant, and questioned one juror during trial. He also argued to the court during the sentencing hearing.

In contrast, counsel for codefendants Jackson and Myrick both presented defenses claiming no knowledge of the circumstances of the case, and blaming the petitioner for the crimes. In their closing arguments, counsel for both codefendants blamed Warner.

Warner and his codefendants were convicted on all four counts. All three initially received 19-year sentences but the trial judge reduced the sentences to 15 years by making a term for a second count run concurrently, stating that he was persuaded somewhat by Kane's and the prosecutor's post-sentencing requests for reconsideration.

The issue is whether petitioner's counsel's inactivity at the trial deprived Warner of effective assistance of counsel required by the Constitution. The Georgia Court of Appeals had denied this claim citing a case on trial tactics and focusing on the activity of Kane before the court.

Petitioner first argues that his trial counsel's conduct constituted denial of the assistance of counsel altogether giving rise to a legal presumption of prejudice. *Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674, 696 (1984). In the companion case to *Washington,* the Supreme Court gave some guidance regarding "denial of assistance" standards, stating:

> [I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.

*United States v. Cronic,* —— U.S. ——, ——, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984).

The state responds that Kane's inactivity was a reasonable trial strategy which was intended to focus the jury's attention upon the codefendants and that representation was therefore not ineffective. The record clearly supports a decision that the actions of Kane at trial were based on trial strategy. Kane testified at the federal habeas corpus hearing that his silence reflected a trial strategy in the face of overwhelming evidence against his client. It should be noted that Kane, himself, argued to the Georgia court that he had ineffectively represented Warner during trial, indicating that he may have harbored some doubt as to the adequacy of his performance. But his subsequent testimony and that of the prosecutor, if believed, is sufficient evidence to make the finding of the magistrate and the district court that his conduct was based on reasonable trial strategy not clearly erroneous.

The Sixth Circuit has recently held a lawyer's decision to stand "mute" at his client's criminal trial to be constitutional error even without a showing of prejudice.

> The failure of [the defendant] Martin's attorney to participate in the trial made the adversary process unreliable. Because his attorney refused to participate in any aspect of the trial, Martin was unable to subject the government's case against him to 'the crucible of meaningful adversarial testing'—the essence of the right to effective assistance of counsel. [*United States v. Cronic,* 104 S.Ct.] at 2045. The attorney's total lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been absent. This was constitutional error even without any showing of prejudice.

*Martin v. Rose,* 744 F.2d 1245, 1250–51 (6th Cir.1984).

*Martin* differs from the instant case, however, in several important respects: (1) Martin, in subsequent proceedings, denied the criminal sexual conduct, incest, sodomy

and crimes against nature testified to by his two step-daughters; (2) the testimony of the complaining witnesses was subject to some question; (3) Martin was the sole defendant and did not have two co-defendants' counsel cross-examining state witnesses; (4) the evidence was not as overwhelming against the defendant in *Martin*, as was against Warner; and (5) defense counsel in *Martin* testified that he was not prepared whereas here Kane's assertions are to the contrary. We doubt if *Martin* can be read to hold that in no case of a tactical decision to remain mute at trial would constitutional relief be granted without a showing of prejudice.

■ Silence can constitute trial strategy. Whether that strategy is so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. *Washington* has established that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* —— U.S. at —— ——, 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95. Thus, in order for a petitioner with an ineffective assistance claim to prevail over his former counsel's assertion of strategy, he must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

■ Applying the Supreme Court's *Washington* analysis to the "silent strategy" at issue here we must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

The district court's conclusion that Kane's silent trial tactic was reasonable under the circumstances is not clearly erroneous. The trial judge had rejected Warner's two attempts to plead guilty within 24 hours of trial and was apparently annoyed at Warner's refusal to acknowledge guilt in the firearm count during the attempted guilty pleas. Kane testified that although

he believed that Warner's case did not have a "strong fact situation for trial," he was prepared to go to trial if necessary. He testified that Warner's substantial prior record and the overwhelming evidence against all three defendants influenced his decision to maintain a "low profile" before the jury. Since Kane knew codefendants' counsel to be very aggressive trial lawyers, he anticipated they would thoroughly cross-examine the Government's witnesses. He also arranged for them to "handle the voir dire" and for additional peremptory strikes to be given to one of codefendant's counsel. Kane testified that he discussed the "silent strategy" with Warner "throughout the trial."

Russel J. Parker, the prosecutor against whom Kane tried Warner's case and 15 other criminal cases in 1979, testified favorably to Kane's competence as a defense attorney. Kane himself testified that he had used the "silent strategy" with success in previous multiple defendant trials.

■ In view of all the circumstances here, Kane's representation was not so defective as to entitle Warner to constitutional relief without a showing that his attorney's conduct prejudiced him.

■ The Supreme Court has held that in order to prove prejudice, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Washington,* —— U.S. at ——, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Warner has failed to meet this requirement. The evidence against Warner as to the first theft count was direct and overwhelming. Although the two credit card theft counts and the weapon count evidence was less strong, he has suggested no defense that could have been presented. In fact, Warner's two codefendants, both of whose counsel presented vigorous defenses before the same tribunal, were both convicted and both received precisely the same sentence as Warner, fifteen years. For all this record shows, virtual silence may well have been the best trial strategy available for the obviously guilty Warner.

**626**

Even if trial counsel had taken every step now urged by the petitioner, there is no reasonable probability that Warner would have been acquitted or received less than a fifteen-year sentence. As noted by the United States magistrate in his recommendation to the district judge:

> While petitioner complains of his counsel's failure to file any pretrial motions to suppress either the evidence seized during his arrest or his confession, petitioner can provide no authority that these tactics would have succeeded. Petitioner does not show any question which should have been asked on cross-examination which was not asked by counsel for his codefendants. Neither does he allege any witness who should have been called in his defense. At the evidentiary hearing, petitioner admitted he could think of nothing his counsel should have done. He only expressed displeasure at his counsel's apparent lack of participation in the trial, a strategy which counsel testified he discussed with petitioner at the trial.

Having failed to demonstrate prejudice, petitioner's claim of ineffective assistance of counsel fails.

AFFIRMED.