James **HARDING**, Petitioner–Appellant,

v.

Leoneal **DAVIS**, Respondent–Appellee.

No. 87–7698.

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1989.

James Harding, Bessemer, Ala., David R. Arendall, Arendall & O'Kelley, Birmingham, Ala., for petitioner-appellant.

Don Siegelman, Atty. Gen., Montgomery, Alabama Fred F. Bell, Asst. Atty. Gen., Alice Wilhelm, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before KRAVITCH and EDMONDSON, Circuit Judges, and HOFFMAN *, Senior District Judge.

HOFFMAN, Senior District Judge:

This habeas corpus appeal involves a determination of whether a criminal defendant, James Edward Harding, received effective assistance of counsel during the course of his trial and conviction on a charge of unlawful possession of a controlled substance,[1] in the Circuit Court for the County of Escambia, at Brewton, Alabama.

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. The jury verdict was for unlawful possession of a controlled substance, but the Court initially

I.

Harding was an inmate at the G.K. Fountain Correctional Center when he was arrested in December, 1981, for possession of a controlled substance, which was found in a belt in Harding's possession. Harding filed for indigency status and the county Public Defender, B.F. Lovelace, was appointed to represent him. Lovelace met with Harding at the prison to discuss the case on June 30, 1982, shortly after the indictment was returned, at which time Harding explained that he had been caught with pills which he believed were Valium but that actually belonged to another inmate, DeWitt Grant. Lovelace reviewed the state's case and met with Harding again in late July, 1982. Lovelace said that at this meeting, Harding did not want to talk about the case because he had some motions before the court. On that occasion, Harding told Lovelace that he wanted Tommy Luttrell and DeWitt Grant produced as witnesses. Harding claims that Lovelace was not investigating his case and was only interested in plea agreements. Lovelace, at a later *coram nobis* evidentiary hearing, had no recollection or note about talking with Luttrell or Grant.

Harding filed a motion requesting the appointment of other counsel after meeting with Lovelace on August 10, 1982. The trial court denied this motion after a hearing on August 12, 1982. The trial court stated that the case would be tried the next week and that Lovelace would be Harding's attorney.

The case went to trial on August 18, 1982. Harding again requested appointment of new counsel. The court denied the request and informed Harding to prepare for jury selection. The court told Harding that he could have Lovelace help him select a jury or he could select one for himself. As Harding refused to select a jury for himself, the court chose one for him.

---

made reference to a separate indictment charging Harding with "promoting prison contraband" and stated that the Public Defender had been appointed to represent Harding on both charges.

Neither Harding nor Lovelace made an opening statement. After each prosecution witness' testimony, the court asked both Lovelace and Harding if they cared to cross-examine, yet neither ever examined any witness. Neither made even a single objection.

At the close of the state's evidence, the court informed Harding that either Harding or Lovelace could argue Harding's case before the jury, which could have included calling two witnesses (Luttrell and Grant) who Lovelace had subpoenaed for the trial. Harding only repeated his request for a lawyer. Lovelace said he wouldn't place the witnesses on the stand because Harding wouldn't tell him what the witnesses might prove.

The state then moved for a directed verdict against the criminal defendant. After recalling the jury, the judge said:

> Since that time [the time that the court refused Harding's request for new counsel] the defendant has refused to represent himself and has refused to present any evidence whatsoever. And the state has made a motion for a directed verdict. And the court has no alternative but to direct you there can be one verdict. And let one of your member sign this verdict and return it into court. Let one of your member sign it as foreman, whoever you elect as foreman. You may retire and make up your verdict.

The jury returned a guilty verdict. Harding was sentenced under the Alabama Habitual Felony Offenders Act to life imprisonment. The Alabama Criminal Court of Appeals affirmed the conviction without opinion on March 29, 1983. On June 24, 1983, the Alabama Supreme Court denied certiorari. Harding's petition for a writ of error *coram nobis* in the Circuit Court for Escambia County was also unsuccessful, but the state appellate court directed an evidentiary hearing on the *coram nobis* petition. Harding did not prevail on *coram nobis;* the state court judge making no findings but merely holding that Harding had not met his burden of proof.

His state remedies exhausted, Harding then petitioned for a writ of habeas corpus in the United States District Court for the Southern District of Alabama. The United States Magistrate recommended that the petition be denied and the United States District Judge adopted this recommendation. It is this order which Harding now appeals.

## II.

The conduct of both the trial court and the court-appointed counsel during Harding's trial fell below the standards required by the Constitution to guarantee a fair trial. No one appeared certain of the role which the appointed counsel was to take in the trial court. Lovelace remained silent through virtually the entire trial, except for various remarks indicating that Harding did not desire his assistance. The trial judge recognized that Harding had said that he would not accept Lovelace as his counsel, yet the trial judge took no steps to warn Harding of the dangers which awaited him if he proceeded without counsel.

The trial proceeded with Harding being treated at times as a *pro se* litigant and at others as "joint counsel" with Lovelace. We hold that the trial judge erred in allowing this confusion to continue throughout the trial, thus denying Harding's Sixth Amendment right to counsel.

Harding cannot be said to have invoked his right of self-representation in accordance with *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which requires an accused to " 'knowingly and intelligently' forgo [the] relinquished benefits [of counsel]." *Id.* at 835, 95 S.Ct. at 2541; *Jackson v. James*, 839 F.2d 1513, 1516 (11th Cir.1988). Nor does the record support a finding that Harding waived his right to counsel.

The Eleventh Circuit makes mandatory the duty of a trial judge to hold a waiver hearing regarding the disadvantages of *pro se* defense. *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1071 (1986). Such a hearing should make the accused aware of the dangers and disadvantages of self-representation and establish a record that the

accused "knows what he is doing and his choice is made with open eyes." *Faretta*, 422 U.S. at 835, 95 S.Ct. at 2541.

■ The trial judge did not fulfill the obligation under *Faretta*. He neither alerted Harding to the dangers of proceeding *pro se* nor warned Harding that the consequence of his refusal to cooperate with his appointed counsel would be to require Harding to proceed *pro se*. As Harding was not properly apprised of the dangers and disadvantages of self-representation, he cannot be said to have waived representation or elected self-representation. *See Jackson*, 839 F.2d at 1516.[2]

### III.

■ Because Harding neither waived his right to counsel nor invoked his right to self-representation, Lovelace remained as appointed counsel at the beginning and for at least part of Harding's trial.[3] As reflected in the record, Lovelace did nothing to fulfill the obligations of his position as counsel. As this court has said before, even a criminal defendant's complete non-cooperation does not free his lawyer to abdicate his professional responsibility to represent his client in the best way possible under the circumstances. *Thomas v. Wainwright*, 767 F.2d 738, 743 (11th Cir.

1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). We cannot ignore the manifest indifference to Harding's rights demonstrated by Lovelace's failure to object to a directed verdict. A trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict regardless of how overwhelmingly the evidence may point in support of guilt. *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *Standefer v. United States*, 447 U.S. 10, 22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689 (1980); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977); *United States v. Goetz*, 746 F.2d 705, 708 (11th Cir.1984). In this case, the trial judge clearly directed the verdict against Harding upon the prosecution's motion. His charge to the jury included no instructions of law or burdens of proof. Rather, he instructed the jury that they could reach but one verdict in this case and directed the jury to sign the verdict form and return it to the court. The trial judge's direction of the verdict denied Harding his Sixth Amendment guarantee to a jury trial and resulted in the wrong entity judging the defendant guilty. *Rose*, 478 U.S. at 578, 106 S.Ct. at 3106.[4]

---

**2.** This court upholds the rule that an accused cannot force the appointment of new counsel by simply refusing to cooperate with his attorney, notwithstanding the attorney's competence and willingness to assist. *See United States v. Moore*, 706 F.2d 538, 540 (5th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983). In fact, this circuit has held that a persistent, unreasonable demand for dismissal of counsel and appointment of new counsel may be the functional equivalent of a knowing and voluntary waiver of counsel. *Thomas v. Wainwright*, 767 F.2d 738, 743 (11th Cir.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). *See also Moore*, 706 F.2d at 540. We find, however, *Thomas v. Wainwright* inapplicable in this case as the trial court made no effort to warn Harding of the consequences of his action.

**3.** The record seems to indicate that Harding attempted to remove Lovelace as his counsel at the close of the prosecution's case. R–37. Even at this point, however, the trial judge asked Lovelace if he cared to present any evidence or call witnesses. R–37–39. Furthermore, this Court is not convinced that Harding could re-

move Lovelace as his counsel without compliance with the requirements of *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975).

**4.** Had the issue of the directed verdict been raised on direct appeal of this case, the Alabama courts would certainly have had to reverse Harding's conviction. *See Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642 (1977). This court is mindful, however, of the exhaustion requirement in habeas corpus cases. *Rose v. Lundy*, 455 U.S. 509, 518–19, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982). Because the issue of the directed verdict has never been addressed by the Alabama courts, Harding's state remedies for this error could not be considered exhausted. Harding's appellate counsel, however, has not raised the directed verdict error as a separate issue, but rather has included the failure to object to the directed verdict as one of the claimed ways in which Harding's counsel was ineffective. As Harding has exhausted his state claims on the

Even one only tangentially responsible for safeguarding a defendant's rights would be required to guard that such a flagrant constitutional violation not be allowed to occur. We therefore find that Lovelace abrogated his duty of representation by failing to object when the trial court directed a verdict against his criminal defendant client.

As the United States Supreme Court held in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. *Id.* at 658, 104 S.Ct. at 2046. *Accord Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) (purpose of effective assistance of counsel guarantee is to ensure that criminal defendants receive fair trials). *Cronic* represents a narrow exception which the Supreme Court has carved out of the general rule that a petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by errors in his counsel's performance. *Stone v. Dugger*, 837 F.2d 1477, 1479 (11th Cir.1988); *Smith v. Wainwright*, 777 F.2d 609, 620 (11th Cir.1985), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986); *Chadwick v. Green*, 740 F.2d 897, 900 (11th Cir.1984). The Supreme Court has found constitutional error without any showing of prejudice when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceedings, *Cronic*, 466 U.S. at 659 & n. 25, 104 S.Ct. at 2047 & n. 25, or if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. *Id.* at 659 & n. 26, 104 S.Ct. at 2047 & n. 26.

Although this circuit recognizes that silence of counsel is not *per se* a prejudicial error under *Cronic, see Warner v. Ford*, 752 F.2d 622, 624–25,[5] we have held that

silence of counsel may constitute denial of counsel at a critical stage of trial and thus constitutional error even without a showing of prejudice. *Jackson v. James*, 839 F.2d 1513, 1517 n. 5 (11th Cir.1988). *See also Martin v. Ross*, 744 F.2d 1245, 1250–51 (6th Cir.1984).

In *Jackson v. James*, the appointed counsel, Hayes, filed a motion to withdraw as counsel for the accused, Jackson. *Jackson*, 839 F.2d at 1515. One judge denied the motion, but a second told Jackson that he could either represent himself or have Hayes represent him. *Id.* Jackson refused representation from Hayes, leaving Jackson to represent himself. *Id.* Hayes was instructed to act as stand-by counsel. *Id.*

Prior to the ninth and last witness in the case against Jackson, he requested the court to reappoint Hayes. *Id.* Hayes represented Jackson for the remainder of the trial. In Jackson's subsequent habeas corpus action on claims of ineffective assistance of counsel, this court found that Jackson had not waived his right to counsel and had not "knowingly and intelligently" accepted the burden of self-representation. *Id.* at 1516–17. The court noted that the appointment of Hayes as stand-by counsel did not cure the constitutional infirmity as Hayes did not represent Jackson during jury selection, opening statement and examination of eight of nine witnesses. *Id.* at 1517 & n. 5.

This case presents a similar situation. Lovelace was silent throughout virtually the entire trial, but most crucially, he remained silent as the judge directed a verdict against his criminal defendant client. We hold that his silence at the point the verdict was directed against his client was so likely to prejudice Harding that the cost of litigating its effect is unjustified and prejudice is presumed. *Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046. *See also Rose v.*

ineffectiveness of counsel charge, we conclude that this Court may consider the failure to object to the directed verdict as part of the ineffectiveness claim.

5. This circuit held in *Warner* that silence can constitute trial strategy. Whether that strategy is so defective as to negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. *Warner*, 752 F.2d at 625.

*Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (plain error to direct a verdict against a criminal defendant; prejudice is assumed).

### IV.

For the reasons stated, we REVERSE the decision of the district court and REMAND this case to the district court with further instructions to grant the writ of habeas corpus unless the State of Alabama sees fit to retry Harding within a reasonable period of time, not to exceed 90 days from the date the mandate or other order is received by the district court, unless an emergency arises. We assume that the state court judge will appoint competent counsel if requested by Harding.

EDMONDSON, Circuit Judge, concurs in the result.