Hector Enrique REYES–
VASQUEZ, Movant,

v.

UNITED STATES of America,
Respondent.

Nos. 91–1809–CIV, 88–682–CR.

United States District Court,
S.D. Florida.

Oct. 20, 1994.

Richard Klugh, Asst. Federal Public Defender, Ft. Lauderdale, FL, for Reyes–Vasquez.

Carol Wilkinson, Asst. U.S. Atty., Miami, FL, for U.S.

### AMENDED ORDER GRANTING MOTION TO VACATE CONVICTION

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Movant's motion to vacate his conviction, filed, pursuant to 28 U.S.C. § 2255, on August 21, 1991. Movant asserts that his counsel's assistance at his criminal trial was ineffective. Upon two separate Orders of Reference from this Court, United States Magistrate Judge Lurana S. Snow issued two Reports and Recommendations, the first on November 5, 1992, and the second on May 3, 1994. In both instances, Magistrate Judge Snow recommended that this Court grant movant's motion. Respondent filed timely objections to both Reports and Recommendations. For the reasons that follow, the Magistrate Judge's Reports and Recommendations are ADOPTED, and Movant's motion to vacate conviction is GRANTED.

### I.

Movant was indicted on October 6, 1989, on a charge of possession with the intent to distribute at least five kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The charge was based on Movant's attempted sale of seven kilograms of cocaine to Special Agent Osvaldo Amato of the Drug Enforcement Administration ("DEA"). Movant's trial counsel indicated, prior to the trial, that he intended to proceed with a defense of "good faith reliance on the apparent authority of the [Central Intelligence Agency] to conduct an undercover cocaine transaction with the object of assisting national security." Pet.Suppl.Mem. Supp.Mot. Vacate Conviction at 3. Acting on a motion *in limine* by the United States, United States District Judge Thomas E. Scott ruled that this defense was foreclosed by the binding authority of *United States v. Rosenthal,* 793 F.2d 1214 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). Judge Scott granted the government's motion in full, based on the

Eleventh Circuit's decision in *Rosenthal, supra.* Record Vol. II at 44.

The United States thereafter moved for a protective order to prevent discovery of classified information which had been provided to the Court for its *in camera* review pursuant to the Classified Information and Procedures Act ("CIPA"), 18 U.S.C.App. § 3. On January 13, 1989, at a hearing on the motion, Movant's counsel related the facts as given to him by the Movant on which Movant's request for the classified information was based.

According to the Movant's detailed proffer, he was recruited by the Central Intelligence Agency ("CIA") to act as an undercover agent while he was working as a translator for Fidel Castro. Movant spent a year in the Seychelle Islands, continuing to work for Castro and reporting information to the CIA. At the Movant's request, the CIA intercepted him in West Germany while on his way to Havana from Spain. Record Vol. II at 4–5.

At that point, according to the proffer, Movant was relocated to South Florida to help infiltrate a left-wing Colombian political organization known as M–19. The express purpose of M–19 was to overthrow the Colombian government. In order to carry out that task, M–19 intended to ship large quantities of narcotics into the United States and use the proceeds of the drug transactions to buy guns. For the move to South Florida, Movant claims to have been placed under the direction of CIA agent Luis Mendez, who gave him $10,000.00 in cash to aid him in his relocation. Once in Florida, Movant was shown a list of known and suspected M–19 operatives. Coincidentally, his girlfriend had mutual acquaintances with two men on the list—Hugo Correa and Mario Portell. Through his girlfriend's mutual friends, Movant was to attempt to get acquainted with Portell and Correa. The CIA supposedly intended to engage the operatives in a drug transaction, catch them in the act, and use the threat of prosecution as leverage to persuade them to become inside informants for the CIA on M–19 activities. Record Vol. II at 5–7, 39–40.

Eventually, Movant asserts, M–19 operative Portell suggested a drug transaction to

the Movant. Movant discussed this with another CIA agent. The two agents planned that the CIA would stake out the house where the transaction was to take place and catch Portell and Correa in the drug deal. However, unbeknownst to Movant and the CIA, Portell was acting as an undercover agent for the DEA, and the DEA was also monitoring the house. When the drugs arrived at the house, the DEA agents beat the CIA agents to the punch and arrested Movant for narcotics violations. Record Vol. II at 7–8. At that point, Movant allegedly was left to fend for himself.

At the conclusion of the hearing, Judge Scott granted the motion for protective order by the United States. Record Vol. II at 48. Movant's counsel believed that these rulings eliminated any defense that could have been presented on Movant's behalf. Trans. Hearing Mot. Vacate Before the Honorable Lurana S. Snow at 61–65. The parties then attempted to work out a compromise that would allow the issues presented to be preserved for appeal without a trial. However, no agreement was reached. Accordingly, Movant's counsel decided to proceed to trial without taking part in the trial in any way. Counsel for Movant stated that Movant agreed to this course of action, and the Court did not question the Movant in this regard. *Id.* at 19–20, 48–57.

The Movant was convicted by a jury after a trial in which neither Movant nor his counsel participated. Notably, Movant's counsel, Kenneth Lange, did not participate in *voir dire*, gave no opening statement, did not cross-examine the prosecution's witnesses, put on no evidence for the defense, and gave no closing statement. Thereafter, Movant was sentenced to the mandatory minimum term of ten years' imprisonment. Record Vol. IV at 13. Lange then moved for a new trial. He wished to put on a full defense arguing that Mario Portell's involvement in the events leading up to the arrest of the Movant discredited the entire circumstances under which the Movant was arrested. Lange stated that he had new evidence further elaborating the unreliability of Portell and that he wished to craft a defense around the government's non-production of Portell

as a witness when he was so involved in the events leading up to the Movant's arrest. Record Vol. IV at 3–7. This motion was denied on the grounds that the Movant knew enough about Portell's unreliability at the time of trial to have put on this defense at that time. Record Vol. IV at 8. Movant also sought a declaration that the sentencing guidelines were unconstitutional; this motion was also denied. Record Vol. I, no. 73, at 1.

Movant appealed his conviction to the Eleventh Circuit Court of Appeal, arguing not only the bases asserted before Judge Scott—apparent authority and entrapment by estoppel—but also that Movant did not have the requisite intent to commit the crime with which he was charged. The Eleventh Circuit considered only the issues properly presented in the District Court: whether Movant should have been allowed to present his CIA defense—the *Rosenthal* issue—to the jury. *United States v. Reyes–Vasquez,* 905 F.2d 1497, 1498 (11th Cir.1990), *cert. denied,* 501 U.S. 1237, 111 S.Ct. 2869, 115 L.Ed.2d 1035. The Circuit flatly rejected this argument, finding that the defense was foreclosed by *Rosenthal,* and, therefore, that the District Judge's exclusion of evidence was not an abuse of discretion. *Id.* at 1499. The Circuit Court discussed its determination not to review the argument regarding Movant's intent:

> At oral argument on this appeal, Reyes tried to cast this contention in a different light, arguing that testimony about the CIA is relevant to determine whether he had the specific intent to distribute cocaine, an essential element of his crime. But because Reyes failed to argue in the district court that he never intended to deliver cocaine to another person, we decline to address the argument here.
>
> In presenting arguments to busy trial courts, subtlety is no virtue. As we read the record, Reyes failed to raise, and the trial court did not bar, the "no-intent-to-distribute" defense.

*Id.* Accordingly, Movant's specific intent argument was never addressed by any court.

Movant filed the instant motion to vacate his conviction, pursuant to 28 U.S.C. § 2255, on August 21, 1991, asserting that his coun-

sel's assistance at his criminal trial was ineffective. Upon an Order of Reference from this Court, United States Magistrate Judge Lurana S. Snow issued a Report and Recommendation on November 5, 1992, which recommended that the motion be granted. Respondent filed a timely objection to that Report and Recommendation. The Report and Recommendation, however, did not address whether actual prejudice resulted from the ineffective assistance of counsel. Accordingly, this Court referred the matter to the Magistrate Judge for a Report and Recommendation on that issue. Magistrate Judge Snow issued a second Report and Recommendation on May 3, 1994, finding a presumption of prejudice from counsel's lack of participation in Movant's trial and recommending again that Movant's motion be granted. Respondent filed a timely objection to this second Report and Recommendation.

## II.

■ Claims of ineffective assistance of counsel are generally governed by the Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In establishing the relevant analysis for ineffective assistance of counsel cases, the Court explained that the claim of ineffectiveness is related to the Constitution's guarantee of a fair trial.

[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled.... That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.

*Id.* at 685, 104 S.Ct. at 2063. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. The *Strickland* Court then established a two-part test for ineffective assistance cases:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064. In addition, the burden of proof is on the Movant to show ineffective assistance of counsel. *See Jones v. Kemp,* 678 F.2d 929, 932 (11th Cir.1982); *Roberts v. Wainwright,* 666 F.2d 517, 519 n. 3 (11th Cir.1982). Therefore, the Movant must establish both unreasonable performance by counsel and prejudice to his defense in order to succeed with his motion.

### A. *Performance*

■ To meet the performance prong of *Strickland,* Movant must show that his representation did not meet the standard of "reasonableness under prevailing professional norms." *Id.* 466 U.S. at 688, 104 S.Ct. at 2065. In addition, because our inquiry is made with the benefit of hindsight, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)).

■ Magistrate Judge Snow, in her first Report and Recommendation, found that Lange's representation of the Movant fell below the reasonableness standard. Respondent objected generally, referring this Court

to its supplemental response in opposition to the defendant's supplemental memorandum, filed May 15, 1992. The Magistrate Judge's analysis in the first Report and Recommendation focused on Lange's failure to assert the specific intent defense. However, the analysis implicitly applies to trial counsel's lack of participation in Movant's trial as well. Magistrate Judge Snow pointed to the fact that Lange neither presented to the jury nor preserved for appeal Movant's only viable defense. Rep. & Rec. at 13. Accordingly, she found that trial counsel's performance fell below the standard of reasonable representation under the circumstances. We agree.

Trial counsel's effectiveness with respect to both the failure to assert the specific intent defense and the decision not to participate in Movant's trial at all are inextricably linked. Movant presented no defense at his trial. Indeed, counsel did nothing. The government's witnesses were not cross-examined, and no challenge was made with respect to any element of the prosecution's case against him. The mistaken belief that trial counsel had raised the specific intent defense resulted in a complete lack of adversarial testing of the government's case. Thus, counsel's failure to preserve Movant's only viable defense and his lack of participation in the trial are so intertwined that they must be analyzed as a single course of conduct.

Movant's trial strategy was of a singular nature: allow a finding of guilt in whatever way would best preserve the issues for appeal to the Eleventh Circuit. Counsel was involved in negotiations regarding a number of ways to achieve this objective. The parties explored the possibility of a conditional guilty plea, but the government was unwilling to proceed that way. Record Vol. III at 4–5, 8. Lange also attempted to work out stipulated facts with the government to avoid a jury trial, but no agreement was reached. Record Vol. III at 8. Finally, Lange determined that a jury trial would be necessary, but because he felt that all viable defenses had been foreclosed, he determined that no defense would be put on at trial. Record Vol. III at 8. Trial counsel then indicated

that Movant had agreed to this course. Record Vol. III at 8–9. Lange testified:

I indicated it was my inclination, since the whole defense is, in fact, the estoppel or public authority defense and Your Honor has granted the motion in limb [sic] to preclude it, so I have no defense, and the issue is right for appellate review.... Where we are at this point, and Mr. Reyes is in agreement, is that *we are going to just, because I don't want to risk waiving any rights of Mr. Reyes, proceed with the jury trial....* I am going to be respectfully present and noted as present, not participating. I have no defensive [sic], nothing to participate in, given Your Honor's ruling.

Record Vol. III at 8–9 (emphasis added). Despite the singularity of purpose, trial counsel waived the Movant's only viable defense by failing to raise it before the District Court.

At the hearing before Magistrate Judge Snow, Movant's trial counsel testified at length. With respect to the specific intent defense, trial counsel testified:

[I]n my mind a hundred percent—not ninety-nine percent—a hundred percent of my defense was Mr. Reyes's lack of specific intent based upon what I attempted to elicit from the Government pretrial in terms of classified information and CIA handling agents and other stuff to support our defense and if Judge Scott precluded any presentation of that, he also precluded Mr. Reyes from getting up.

Trans. Hearing Mot. Vacate Sentence Before Honorable Lurana S. Snow at 56. Lange also recounted that when he read the Eleventh Circuit opinion he was "shocked" that they refused to consider the specific intent defense. *Id.* at 21–22. Magistrate Judge Snow found, and we agree, that this level of representation—the failed pursuit of a strategy with the single, procedural goal of preserving defenses for appeal—falls below the standard of reasonable representation. *Cf. Orazio v. Dugger,* 876 F.2d 1508, 1513 (11th Cir.1989) (finding a failure to raise claims on appeal deficient representation under *Strickland* analysis); *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.1994) (finding inadequate

assistance where counsel overlooked substantial defenses in favor of clearly weaker ones). Here, counsel not only failed to preserve Movant's defenses, but did so thinking that he had actually preserved them for appeal.

While Respondent has raised no specific objections with respect to this finding, its response brief, filed May 15, 1992, raises essentially two arguments against this analysis. First, the government argues that there can be no section 2255 motion with respect to claims that have already be adjudicated. Govt.'s Resp.Opp.Suppl.Mem.Supp.Mot. Vacate [hereinafter Govt.'s Resp.] at 2–6. Respondent asserts that the issue of specific intent was already litigated before the District Court by way of its own motion *in limine* which requested preclusion of Movant's use of any defense relating to CIA involvement. *Id.* at 2.

In support of this contention, the government points to the following passage from its motion *in limine:*

> [T]he United States respectfully moves this Court to preclude the defendant from presenting or eliciting any testimony or evidence at trial in support of his claim of association with the Central Intelligence Agency or that in engaging in the activity for which he has been indicted he acted with the authorization of, or at the behest or direction of the CIA or any person employed by or action for the Central Intelligence Agency, in that such evidence is immaterial, irrelevant, and fails to constitute a legally cognizable defense.

Record Vol. I, no. 56, at 4; *see* Govt.'s Resp. at 2. The motion also stated:

> It is important to note that the defendant is not contending that he did not possess, or that he did not have the intent to distribute the controlled substance as charged in the indictment. Instead, he asserts that he engaged in the proscribed activity with the belief that his actions were authorized as part of an alleged intelligence operation....

Record Vol. I, no. 56, at 3. Respondent then draws attention to language in Movant's notice of supplemental authorities filed in opposition to the government's motion, which stated:

> *Contrary* to page 3 of the Government's motion, the issue of the accused's lack of criminal intent to distribute the controlled substance as charged in the indictment *is the sole issue* of the accused's trial defense: good faith reliance/entrapment by estoppel.

Record Vol. I, no. 51, at 1; *see* Govt.'s Resp. at 3. Respondent then quotes a number of brief passages from the Eleventh Circuit opinion on appeal to support its contention that this issue was "fully preserved, briefed and argued by Mr. Lange...." Govt.'s Resp. at 4.

However, despite the government's argument to the contrary, there can be no doubt that the Eleventh Circuit refused to consider this issue on appeal. The Circuit Court's opinion states:

> It requires imagination to find here— based on a single line in a pretrial motion, unsupported by any part of a lengthy oral argument on that motion in district court—an entirely different defense: that is, that Reyes had no intent to pass cocaine to others. As Reyes' presented his defense to the district court, he—*at most*— hinted at a no-intent-to-pass-the-cocaine-on argument. As we have stated, "[w]e decline to add the duty to interpret imaginatively what lawyers say to the long list of responsibilities of magistrates and other trial judges." *United States v. Madruga,* 810 F.2d 1010, at 1014.

905 F.2d at 1500 (emphasis and alterations in original). The Court went on to write:

> The government filed no motion asking the court to bar Reyes from presenting evidence that he never intended to distribute—that is, to pass to others as opposed to hold or to use himself—cocaine. In a similar manner, the district court's order in this case did not bar Reyes from arguing or from presenting evidence that he had no intent to distribute cocaine. Instead, the order was limited to the defense of public authority and the related estoppel defense. Because the district court did not exclude evidence of Reyes' lack of intent to distribute, we cannot say that the court plainly erred by excluding such evidence.

905 F.2d at 1501. Thus, there can be no argument that the defense was considered by either the District Court or the Eleventh Circuit.

Second, Respondent argues that Movant's trial counsel was not ineffective because there was no inadvertent omission of a defense. Govt.'s Resp. at 6–11. The implication of this argument is that Lange deliberately did not assert the defense. Accordingly, Respondent would argue, the failure to put forth the specific intent defense was an intentional decision regarding trial strategy, and that decision, according to the government, falls within the range of acceptable representation under *Strickland. See* Govt.'s Resp. at 10–11. In the evidentiary hearing before the Magistrate Judge, however, Lange testified that he meant to present the specific intent defense to the District Court and, in fact, thought he had actually presented the defense. Trans. Hearing Mot. Vacate Sentence Before Honorable Lurana S. Snow at 18–19, 21–23. There is no evidence in the record to contradict that testimony. Accordingly, Respondent's second objection is also unpersuasive, and we find that Lange provided ineffective assistance at trial. However, Movant must also show prejudice to the defense under the second prong of the *Strickland* test to make out a claim for ineffective assistance of counsel.

B. *Prejudice*

■ Even if a criminal defendant's counsel makes errors which fall below the professionally reasonable standard, the judgment will not generally be vacated unless actual prejudice to the defense can be shown as well. *Strickland,* 466 U.S. at 691–92, 104 S.Ct. at 2066–67. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In this case, Movant argued, and the Magistrate Judge agreed, that no finding of actual prejudice was necessary because prejudice could be presumed from Movant's trial counsel's failure to participate in any way in Movant's trial. Pet.Suppl.Mem.Supp.Mot. Vacate Con-

viction [hereinafter Pet.Suppl.Mem.] at 8–14, 27–32; 2d Rep. & Rec. at 4–10 (citing, in particular, *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Smith v. Wainwright,* 777 F.2d 609 (11th Cir.1985); *Warner v. Ford,* 752 F.2d 622 (11th Cir.1985); *Martin v. Rose,* 744 F.2d 1245 (6th Cir.1984)).

■ In *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), a companion to the *Strickland* decision, the Supreme Court established that in certain circumstances, the prejudice prong of the *Strickland* test may be presumed. *Cronic,* 466 U.S. at 658, 104 S.Ct. at 2046. Thus, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.* at 659, 104 S.Ct. at 2047. This "meaningful adversarial testing" was further explained in a footnote:

> Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade. At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt. And, of course, even when there is a bona fide defense, counsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances.

*Id.* at 656 n. 19, 104 S.Ct. at 2045 n. 19. (citations omitted). In applying the *Cronic* standard, the Eleventh Circuit has recently stated that prejudice will be presumed only in three circumstances: (1) where there is a complete denial of counsel, (2) where the defendant is denied counsel at a critical stage of trial, or (3) where counsel for the defense "fails to subject the prosecution's case to meaningful adversarial testing." *Vines v. United States,* 28 F.3d 1123, 1127 (11th Cir. 1994).

Movant relies heavily on the Sixth Circuit decision in *Martin v. Rose,* 744 F.2d 1245 (6th Cir.1984). The defendant in *Martin* was found guilty on two counts of criminal sexual conduct involving his two minor stepdaughters. Defendant's counsel made two pretrial motions—first, for dismissal because of denial of a speedy trial, and second, for a continuance. Both motions were denied by the trial judge. At trial, the defendant's counsel remained entirely inactive. His only participation was to make a brief statement to the jury explaining that the defendant would be relying on certain pretrial motions, and, therefore, although pleading not guilty, would not be taking part in the trial. Counsel did not participate in jury selection, gave no other opening statement, did not cross-examine any of the state's witnesses, called no witnesses for the defense, and offered no closing argument. Despite its finding that the defendant agreed to the silence tactic and that the decision to remain silent was a strategic maneuver, the Sixth Circuit found that this performance constituted ineffective assistance of counsel. *Id.* at 1248–49. Furthermore, the Court presumed prejudice under the *Cronic* standard:

> The failure of Martin's attorney to participate in the trial made the adversary process unreliable. Because his attorney refused to participate in any aspect of the trial, Martin was unable to subject the government's case to "the crucible of meaningful adversarial testing"—the essence of the right to effective assistance of counsel. [*United States v. Cronic,* 466 U.S. at 655–56, 104 S.Ct.] at 2045. The attorney's total lack of participation deprived Martin of effective assistance of counsel at trial as thoroughly as if he had been absent. This was constitutional error even without any showing of prejudice.

*Id.* at 1250–51.

The Eleventh Circuit has also "implicitly recognized that counsel's tactical decision to stand silent and not participate in a defendant's trial may constitute ineffective assistance of counsel under the *Cronic* standard." *Smith v. Wainwright,* 777 F.2d 609, 620 (11th Cir.1985) (citing *Warner v. Ford,* 752 F.2d 622, 624–25 (11th Cir.1985)); *see also Har-*

*ding v. Davis,* 878 F.2d 1341, 1345 (11th Cir.1989) (recognizing that counsel's silence at a critical stage of trial may be equivalent to a denial of counsel without a showing of prejudice). While silence at trial may be considered a trial strategy, whether that tactic is so deficient that prejudice will be presumed must be analyzed on a case-by-case basis. *Harding v. Davis,* 878 F.2d at n. 5; *Warner v. Ford,* 752 F.2d at 625.

The Eleventh Circuit specifically addressed the Sixth Circuit's decision in *Martin v. Rose* in its opinion in *Warner v. Ford,* 752 F.2d at 622. In *Warner,* the Eleventh Circuit considered a claim of ineffective assistance of counsel in a case involving defense counsel's silence during the defendant's trial. The defendant in *Warner* was convicted of four counts relating to an armed robbery of an automated teller machine. Two co-defendants were tried in the same proceeding with the defendant in that case. Defendant's counsel did not participate in the trial in any way: he did not take part in the *voir dire,* he made no opening statement, cross-examined no witnesses, put on no defense, offered no closing argument, and requested no jury instructions. *Id.* at 623–24. Defendant's counsel did, however, move for a directed verdict on one count, requested a mistrial three times, and recommended that his client not take the witness stand when he was called by his co-defendants to testify in their defenses. *Id.* at 624. In finding that Warner was not entitled to a presumption of prejudice, the Eleventh Circuit acknowledged the Sixth Circuit decision in *Martin,* but distinguished Warner's case on five grounds: (1) Martin denied the charges against him; (2) the testimony against Martin was questionable; (3) Martin was a single defendant, while Warner was one of three co-defendants; (4) the evidence against Martin was not as great as that against Warner; and (5) Martin's defense counsel was not prepared at the time of the trial. *Id.* at 624–25. After making these distinctions, the Eleventh Circuit further elaborated upon the relevant inquiry as to whether counsel's decision to stand mute during the trial would warrant a presumption of prejudice:

> Silence can constitute trial strategy. Whether that strategy is so defective as to

negate the need for a showing of prejudice to establish ineffective assistance of counsel must be judged on a case-by-case basis. *Washington* has established that courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington,* [466] U.S. at [688–91], 104 S.Ct. at 2065–66, 80 L.Ed.2d at 694–95. Thus, in order for a petitioner with an ineffective assistance of counsel claim to prevail over his former counsel's assertion of strategy, he must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

*Warner v. Ford,* 752 F.2d at 625.

Respondent argues that the case at bar is more similar to the facts of *Warner v. Ford,* than it is to *Martin v. Rose.* We disagree. First, as in *Martin,* the government's case against Movant is subject to question. The entire trial consisted of the testimony of two witnesses—Agent Amato and a chemist. Second, Movant has pointed to factual distinctions between the testimony given by Agent Amato at trial and the facts as stated in his affidavit. Movant's Mem. Re. Actual Prejudice at 3–4. In addition, Movant's position, while not amounting to a denial of involvement in the activities in question, has always been that he lacked criminal intent. This specific intent defense was never presented to the jury in any way, nor was it preserved for appeal.

Third, and most crucially, the prosecution's case against the Movant was never subject to adversarial testing of any kind. There were no codefendants whose counsel would cross-examine witnesses or otherwise divert attention away from Movant's involvement in the incident in question. "[E]ven when no theory of defense is available, if the decision to stand trial has been made, *counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt.*" *Cronic,* 466 U.S. at 656 n. 19, 104 S.Ct. at 2045 n. 19. Respondent points out that in *Warner,* the

two codefendants' trial strategy was to blame defendant Warner, and, therefore, that this factor cannot be considered to have favored defendant Warner. Govt.'s Resp. at 17. However, trial counsel in *Warner* knew the codefendants' attorneys to be aggressive and that they would thoroughly cross-examine the government witnesses. *Warner,* 752 F.2d at 625. In addition, Warner's attorney arranged for them to "'handle the voir dire'" and use Warner's peremptory strikes. *Id.*

As to the fourth distinguishing factor in *Warner,* the evidence against the Movant in this case was not overwhelming, as was the evidence against the defendant in *Warner.* The prosecution's case consisted of a single fact witness, and Movant's specific intent defense was never put before the jury. Finally, although, unlike the attorney in *Martin,* Movant's counsel was prepared for trial, he made the decision to stand mute while operating under the plainly mistaken belief that he was precluded by Judge Scott's order from putting on the Movant's only viable defense—innocent intent.

The fact that Judge Scott did not permit the defense to rely upon the apparent authority and entrapment by estoppel defenses in no way precluded the defense of lack of the specific intent to commit the crime with which the Movant was charged. Indeed, the Eleventh Circuit has validated the existence of this defense in circumstances quite similar to the case at bar. *See, e.g. United States v. Juan,* 776 F.2d 256, 258 (11th Cir.1985). In *Juan,* the defendant, prior to trial, indicated, pursuant to CIPA procedures, his desire to present classified information in support of his defense that he "lacked criminal intent because he reasonably thought that he was doing those things in cooperation with the U.S. Government." *Id.* The District Court found that the evidence sought to be introduced was immaterial to the defense. The Circuit, finding error in this determination, held that the defendant should be given the opportunity to establish his defense using the classified information.[1] In so holding, the Court stated:

> classified information sought to be introduced, pursuant to CIPA, rather than allow the full

---

1. This determination was subject to the caveat that the government could decide to admit certain relevant facts or provide a summary of the

Disclosures made by appellant pursuant to CIPA were to the effect that appellant did not dispute the acts asserted by the government to have been performed by appellant. His defense was that he lacked criminal intent because he reasonably thought that he was doing those things in cooperation with the U.S. Government.... Appellant should be allowed, subject to [the CIPA alternatives available to the government], to establish the premise for his claim.

*Id.* at 258. *See also United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1363–66 & n. 18 (11th Cir.1994) (finding abuse of discretion in District Court's ruling that a document relating to the defendant's termination from his relationship with the FBI was immaterial to his defense of lack of intent to commit a crime); *United States v. Anderson,* 872 F.2d 1508, 1517 (11th Cir.1989) (finding that classified material was properly excluded, but recognizing defendants' right to argue that they lacked criminal intent because of their belief that they were aiding the CIA).

Plainly, the burden was on the United States to prove beyond a reasonable doubt that the Movant had the specific intent required under the statute—that the Movant acted with the requisite *mens rea* to be guilty of this crime. The exclusion of the apparent authority and entrapment by estoppel defenses could not be said to have alleviated the burden which patently rested with the prosecution. Nor can it be said in any way that it would have waived the appeal of the other defenses if Movant's trial counsel had presented the lack of intent defense.

Among other things, counsel could have presented Movant's testimony and argued that he never intended to commit a crime or even to distribute cocaine to anyone, including the DEA agent who eventually intercepted the transaction. Lange could also have cross-examined Agent Amato, whose testimony conflicted with his own affidavit in certain respects. At all events, counsel could have argued the issue of intent to the jury in his

closing statement. Counsel chose, however, to do nothing in putting the prosecution to its task of proving its case beyond a reasonable doubt.

Therefore, we are constrained to disagree with Respondent's contention that this trial strategy falls within the range of professionally reasonable conduct under the circumstances. As in *Martin,* Movant's attorney, believing an appeal of his pretrial motions to present the best chances for his client, determined not to participate in trial. In *Martin,* the Sixth Circuit explicitly found that the decision to stand mute at trial was the attorney's strategy and that the defendant agreed to the strategy. Nonetheless, the decision was found to fall short of professionally reasonable conduct under the circumstances. Where, as in this case, viable defenses are available to the Movant unbeknownst to trial counsel, the prosecution's case consists of a single witness who has presented conflicting testimony in an affidavit, and defense counsel takes no part whatsoever in the trial, we cannot say that the trial strategy was reasonable under the circumstances. Accordingly, we will presume prejudice to the Movant's defense in the unusual circumstances presented by this case.

Trial counsel's complete lack of participation in the Movant's trial based on a misperception of the District Court's ruling and of the defenses available to the Movant constituted a denial of counsel in violation of the Sixth Amendment. "That a person who happens to be a lawyer is present at trial alongside the accused ... is not enough to satisfy the constitutional command." *Strickland v. Washington,* 466 U.S. at 685, 104 S.Ct. at 2063. Every criminal defendant is entitled to have his lawyer step up to the plate and take his best swing. Movant's lawyer was essentially a disinterested spectator in this game—he never left his seat, let alone lifted the bat off his shoulder.[2] Such complete inattention to a criminal defendant's trial cannot pass constitutional muster. The Sixth

disclosure of classified information. *Id.* at 258–259.

**2.** In fact, Movant's trial counsel was reading through much of the trial, as evidenced by Judge

Scott's admonition: "THE COURT: We have a verdict. Excuse me. Mr. Lange, put away your reading material just for the purposes of the verdict."

Amendment embodies the critical importance of counsel at every stage in the proceedings. The entire notion of an adversarial system producing a just result will collapse under circumstances like those presented in this case, where counsel utters not a single word in the course of trial. No sound tactical or strategic consideration can here justify counsel's failure to fire a single shot in defense of his client. The command of the Sixth Amendment and our deeply rooted ideas concerning fundamental fair play require more.

Accordingly, it is hereby

ORDERED and ADJUDGED that both Reports and Recommendations are ADOPTED, and Movant's motion to vacate conviction is GRANTED.

DONE AND ORDERED.