[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-13053

_____

D.C. Docket No. 1:10-cv-23898-CMA


ANNA CASTILLO,

Petitioner-Appellee,

versus

STATE OF FLORIDA,
Secretary of DOC,

Respondent-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 22, 2013)

Before CARNES and COX, Circuit Judges, and RESTANI,[*] Judge.

CARNES, Circuit Judge:

_____

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

A juror was absent during the second day of the three days of testimony in a state criminal trial. Then she was either replaced by an alternate and did not participate in deliberations and reaching a verdict, or she was not replaced and did participate. One might think it would be simple to tell what happened because the juror either did or didn't participate after being absent from a day of testimony. It is not a simple matter, however, largely because of a series of mistakes bordering on blunders committed by various attorneys representing the State of Florida at one time or another in this case.

For example, attorneys representing the State convinced the state collateral courts to find that the juror in question did deliberate and vote to convict the petitioner, but that was okay because the juror actually did not miss any of the trial. When the case got to the federal habeas stage, however, a somewhat different group of attorneys representing the State eventually conceded that the juror had indeed been absent during at least one full day of testimony, but they insisted that was okay because she actually did not participate in the deliberations or have anything to do with the verdict after all. Those attorneys for the State sought to free themselves from the state court findings by arguing that those findings, which the first set of attorneys for the State had urged upon the state courts, were unreasonable within the meaning of 28 U.S.C. § 2254(d)(2). To prove what they are now convinced are the true facts, they offered the federal district court a

2

document from one of the court reporters in the trial, which they termed an "affidavit" even though it was neither dated, nor made under oath, nor certified as true under penalty of perjury. Along the way, these attorneys have churned up a number of other issues with which the district court grappled.

We think there has been enough grappling with too many issues in this case already. Instead of larding up this opinion with all of the procedural and factual twists and turns, and all of the unnecessary questions and issues, we will skinny the case down to its essence by making simplifying assumptions in favor of the petitioner on each of the factual questions and secondary issues.

## I.

The facts are that Anna Castillo was charged by the State of Florida with three counts of attempted armed robbery and one count of armed robbery. The charges arose out of three separate incidents that involved four victims and occurred within an hour-and-a-half period on January 12, 2003, in the Miami Beach area. Following severance of the armed robbery count, Castillo was tried before a six-person jury on the three counts of attempted armed robbery. After a three-day trial with some testimony each day, and most of it on the second day, the jury convicted Castillo on all three counts. To return a verdict the jury had to be unanimous, and it was. Castillo was ultimately sentenced to 15 years imprisonment as a habitual offender, and her convictions and sentence were

3

affirmed on direct appeal. See Castillo v. State, 944 So. 2d 368 (Fla. 3d DCA 2006).

The lingering factual dispute is about whether one of the jurors, Ingrid Caldwell, was allowed to deliberate and vote on the verdict after missing the second of the three days of trial and all of the testimony presented on that second day. For present purposes we will assume, as Castillo argues, that after being absent for all of the second day of trial, Ms. Caldwell was not replaced by an alternate juror but instead returned on the third day of the trial to participate in the deliberations and vote with the other jurors to convict.

Castillo's counsel did not object to that unusual turn of events because he did not notice that Ms. Caldwell participated in the jury deliberations (possibly because that is not what actually happened, but we are assuming that it did). Based on that failure to object, Castillo presented a claim of ineffective assistance of counsel to the state courts. They rejected it, see Castillo v. State, 43 So. 3d 57 (Fla. 3d DCA 2010), albeit on the basis of factual findings that each side now agrees, although for different reasons, were not correct. Regardless, everyone is of the same mind that there is no 28 U.S.C. § 2254(d) deference due to the state courts' decisions.

And the State has not contested Castillo's position that if juror Caldwell deliberated after being absent during one day of trial testimony, counsel's failure to

4

notice and object to her doing so was outside the wide range of reasonable professional assistance — that the deficiency component of the ineffective assistance claim is met.  See Strickland v. Washington, 466 U.S. 668, 687–89, 104 S.Ct. 2052, 2064–65 (1984).  We have our doubts about that, see infra n.2, but in keeping with our decision to assume in Castillo's favor everything that does not matter to the result, we will assume deficient performance.  The State contends that the ineffective assistance claim should be rejected on prejudice grounds.  Castillo disagrees but not because she contends that there was any actual prejudice within the meaning of the Strickland decision.  She does not contest the State's contention, and the district court's determination, that there is no reasonable probability of a different result but for counsel's asserted oversight.

We agree that there was no actual prejudice because all of the testimony presented during the second day of trial (like that presented during the first and third days) was evidence of guilt.  There was nothing juror Caldwell missed during the second day that would have helped Castillo.  The testimony and evidence presented that day (and the other two days as well) proved guilt, not innocence.

It is worth summarizing the evidence on each of the three days of trial.  On the first day the prosecution called two witnesses, including one of the victims of Castillo's string of attempted armed robberies.  Aleksandra Jaworska positively identified Castillo in court as the woman who attempted to rob her and a friend,

Regula Fecker, at gunpoint at around 8:15 p.m. on January 12, 2003. Jaworska also testified that she had identified Castillo as the assailant at a show-up identification conducted shortly after the crimes occurred. The prosecution's second witness on the first day, Detective Gustavo Sanchez of the Miami Police Department, testified that he responded to a 911 call placed by another of Castillo's attempted armed-robbery victims, Amber Austin, who positively identified Castillo as her assailant at the show-up identification. Sanchez further testified that, after advising Castillo of her Miranda[1] rights, she confessed to the attempted robbery of Austin, telling him: "yeah I robbed her." Sanchez searched the red Cadillac that Castillo had been riding in and uncovered a loaded handgun beneath the driver's seat near the passenger front side. When questioned about the firearm, Castillo admitted that she had used the gun.

During the second day of trial, which is the one we are assuming that juror Caldwell missed, the prosecution presented the testimony of five more witnesses, including Amber Austin. Austin testified that Castillo had tried to rob her at gunpoint at approximately 8:25 p.m. on January 12, 2003, and that she had positively identified Castillo as the would-be robber at the show-up identification conducted later the same night. Officer Joe Motola, who stopped Castillo on the night in question, testified about her having been in the red Cadillac, which was

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

6

incriminating because all three victims — Jaworska, Fecker, and Austin — had seen her flee in a red Cadillac following each of the three attempted robberies.

Also on the second day of trial, Lisa Burstein and Rachel Finkelstein gave testimony implicating Castillo in the actual (instead of attempted) armed robbery count that had been severed for separate trial. Their testimony was admitted for the purpose of showing the intent-to-rob element of the three attempted robbery counts against Castillo in this case. It rebutted Castillo's suggestion to the arresting officer that the attempted armed robberies were merely "a joke." Both Burstein and Finkelstein testified that Castillo had stolen Burstein's purse and cellphone at gunpoint shortly after 7:00 p.m. on January 12, 2003. Burstein told about recovering her cellphone and driver's license at the scene of the show-up identification, where both she and Finkelstein had positively identified Castillo. A crime scene technician testified that she had not been able to recover any usable fingerprints from the firearm that had been found in the red Cadillac, but she explained that was not an unusual occurrence with firearms.

On the third day of trial, the State called its final witness, Regula Fecker, who positively identified Castillo as the woman who had attempted to rob her and Jaworska. After the State rested, Castillo declined to testify on her own behalf and did not call any defense witnesses. As this summary shows, all of the evidence presented during all three days of the trial, including the second day, was

7

incriminating. Chances for acquittal vary inversely with the amount of incriminating evidence that jurors hear. There is no reasonable probability that if all six jurors, instead of just five of them, had heard the five prosecution witnesses testify during the second day of trial, Castillo would have been acquitted.[2] There was no actual prejudice.

## II.

Instead of taking an impossibly long shot by arguing actual prejudice, Castillo has pretty much bet the house on United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039 (1984), and Harding v. Davis, 878 F.2d 1341 (11th Cir. 1989), gambling that prejudice is to be presumed. She won that bet in the district court,

---

[2] This is why we are skeptical of Castillo's contention and the State's implicit concession — it does not address the issue — that it was deficient performance for defense counsel not to object to the participation of juror Caldwell in deliberations after she had missed hearing all of the prosecution witnesses who testified during the second day of trial. The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons. See Chandler v. United States, 218 F.3d 1305, 1315 & n.16 (11th Cir. 2000) (en banc) (explaining that "[t]he reasonableness of a counsel's performance is an objective inquiry," which asks "whether some reasonable lawyer could have conducted the trial in that manner" and requires a petitioner to show that "no competent counsel would have taken the action that his counsel did take"); accord Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 790 (2011) ("Strickland . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind.").

Why would any defense lawyer in his right mind prefer a juror who had heard five prosecution witnesses give incriminating testimony about his client (as each of the two alternate jurors in this case had) over a juror (Caldwell) who had not heard that testimony? It seems to us that it would have come closer to ineffective assistance for defense counsel to have insisted that a juror who had not heard all of the incriminating evidence be replaced with an alternate juror who had. As we mentioned earlier, however, for whatever peculiar reasons it may have had the State has not contested the finding of deficient performance if juror Caldwell did participate in the deliberations leading to the verdict, as we are assuming that she did.

which granted the writ after concluding that Castillo had established deficient performance and though she could not establish actual prejudice under Strickland, prejudice would be presumed. Castillo v. Tucker, No. 10-23898, slip op. at 22–30 (S.D. Fla. Feb. 3, 2012). Another way of saying the same thing, which is how the district court sometimes said it, is that counsel's failure to object to Caldwell's presence on the jury that returned the verdict was "per se prejudicial" under Cronic. The court concluded that Cronic applied because, while counsel "may have otherwise well represented [Castillo] at trial," his failure to move for a mistrial based on Caldwell's participation in deliberations "undermined the integrity of the trial such that no meaningful adversarial testing could be adjudicated" and effectively deprived Castillo of counsel at a critical stage of the trial. Castillo v. Tucker, No. 10-23898, op. at 13–14 (S.D. Fla. May 31, 2012). We disagree.

A petitioner asserting a claim of ineffective assistance of counsel ordinarily must satisfy the requirements of Strickland. See Conklin v. Schofield, 366 F.3d 1191, 1201 (11th Cir. 2004). That means a petitioner must affirmatively prove both deficient performance and actual prejudice. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. When

9

considering deficient performance at the guilt stage, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695, 104 S.Ct. at 2068–69. Absent proof of actual prejudice "it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. at 2064. In Cronic, however, the Supreme Court identified three exceptions to the actual prejudice requirement — three exceptional circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S.Ct. at 2046.

Prejudice may be presumed under Cronic where, and only where: (1) there is a "complete denial of counsel" at a "critical stage" of the trial, (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) under the "circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." Id. at 659–61, 104 S.Ct. at 2047–48 (emphasis added); see also Bell v. Cone, 535 U.S. 685, 695–96, 122 S.Ct. 1843, 1851 (2002) (discussing the three scenarios in which Cronic applies). As we have held, in an en banc decision, Cronic's presumption of prejudice "applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the

10

defendant was in effect denied any meaningful assistance at all." Stano v. Dugger, 921 F.2d 1125, 1153 (11th Cir. 1991) (en banc).

Under Cronic's first exception, prejudice may be presumed where counsel is either entirely absent from, or was prevented from assisting the accused during, a critical stage of the trial. See Cronic, 466 U.S. at 659 n.25, 104 S.Ct. at 2047 n.25 (explaining that an accused is denied counsel at a critical stage of trial "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding") (emphasis added); Cone, 535 U.S. at 695–96, 122 S.Ct. at 1851 (noting that prejudice may be presumed "where the accused is denied the presence of counsel at a critical stage") (quotation marks omitted) (emphasis added); Strickland, 466 U.S. at 692, 104 S.Ct. at 2067 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.") (emphasis added). This first exception does not come close to applying here. Counsel was present throughout every moment of the trial, and there is no suggestion that he was prevented from assisting Castillo in any critical stage of the trial.

Cronic's second exception applies only where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." 466 U.S. at 659, 104 S.Ct. at 2047 (emphasis added). In the past decade, the Supreme Court has repeatedly underscored the narrowness of Cronic's second exception, stressing that

11

it is reserved for situations in which counsel has "<u>entirely failed</u> to function as the client's advocate" by failing to meaningfully oppose the prosecution's case. <u>Florida v. Nixon</u>, 543 U.S. 175, 179, 189, 125 S.Ct. 551, 555, 561 (2004) (emphasis added).  To dispense with a showing of actual prejudice, counsel's failure to test the prosecution's case "must be <u>complete</u>."  <u>Cone</u>, 535 U.S. at 697, 122 S.Ct. at 1851 (emphasis added).  The Court has explained that, unless counsel fails to oppose the prosecution throughout the "proceeding as a whole," instead of merely failing "to do so at specific points," the prejudice requirement of <u>Strickland</u> applies.  <u>Id.</u> at 697, 122 S.Ct. at 1851.

This second <u>Cronic</u> exception is inapplicable here because counsel did not entirely fail to subject the prosecution's case to meaningful adversarial testing.  To the contrary, he consistently opposed the prosecution's case.  He filed a pretrial motion to suppress Castillo's confession.  He questioned the venire members.  He successfully challenged several prospective jurors for cause.  He used peremptory challenges to remove another three potential jurors.  He gave an opening statement.  He made numerous objections.  He moved for a mistrial on several occasions on different grounds.  He cross-examined each of the State's witnesses.  And he gave a closing argument urging the jury to acquit.  His strategy was to pursue a defense of mistaken identity, and he pursued it the best he could with what he had to work

12

with.  Counsel did subject the prosecution's case to meaningful adversarial testing, not just on occasion but throughout the trial.

The third Cronic exception clearly does not apply because there is no basis for suggesting that "counsel [was] called upon to render assistance under circumstances where competent counsel very likely could not."  Cone, 535 U.S. at 696, 122 S.Ct. at 1851.  Castillo does not contend that this exception applies, and the district court did not find that it did.

Instead, the district court thought that this case fits within the first and second exceptions, mostly the second.  But it does not fit in either of those exceptions for the reasons we have explained.  The district court appears to have believed that an attorney's failure to object to a constitutional or otherwise important error can warrant a presumption of prejudice and win the defendant a reversal regardless of whether there is real (non-presumed) prejudice.  But there is no "big error" exception to the actual prejudice requirement.  The Cronic escape route around that requirement has only the three lanes the Supreme Court staked out in that decision, not four.  If an attorney is present and contests the prosecution's case, any errors he commits are to be judged under the Strickland standard, which requires a showing of actual prejudice.  Recall what the Supreme Court said in that seminal case:  "Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.

13

They cannot be classified according to likelihood of causing prejudice." Strickland, 466 U.S. at 693, 104 S.Ct. at 2067.

Going outside the narrow confines of Cronic to classify errors according to the likelihood of causing prejudice not only flouts the Supreme Court's specific instruction in Strickland, but also contradicts countless other precedents. For example, the Cone decision. That capital case involved an attorney's sentence-stage failure to call any witnesses or make a closing argument. Cone, 535 U.S. at 691–92, 122 S.Ct. at 1848–49. In ordering habeas relief, the Sixth Circuit reasoned that at the sentence stage counsel was constructively absent and failed to subject the prosecution's case for death to meaningful adversarial testing. Cone v. Bell, 243 F.3d 961, 977–79 (6th Cir. 2001). The Supreme Court reversed, holding that a showing of actual prejudice was required and that in the absence of it relief should be denied. Cone, 535 U.S. at 696–98, 122 S.Ct. at 1851–53. The Court explained that "[w]hen we spoke in Cronic of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." Id. at 696–97, 122 S.Ct. at 1851. There was no complete failure of counsel in Cone where "[the habeas petitioner's] argument [was] not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points." Id. at 697, 122 S.Ct. at 1851.

14

In granting relief in this case, the district court made the same error that the Sixth Circuit did in Cone. It focused on specific-point errors, not the trial as a whole. It applied the micro-failure approach, not the macro-failure approach that Cronic requires.

Like the Supreme Court, we have required a showing of actual prejudice in countless cases involving serious mistakes, omissions, or errors by counsel at specific points in time. We have insisted upon a showing of actual prejudice where counsel has failed to investigate and present mitigating evidence at the penalty phase of a capital case. See Boyd v. Allen, 592 F.3d 1274, 1293–1304 (11th Cir. 2010) (rejecting an ineffective assistance claim based on counsel's complete failure to investigate and present mitigating evidence at sentencing of the petitioner's abusive upbringing because the petitioner could not show actual prejudice given the presence of substantial aggravating circumstances); Brownlee v. Haley, 306 F.3d 1043, 1067–75 (11th Cir. 2002) (holding that counsel was ineffective for failing to investigate, obtain, or present any mitigating evidence, including evidence of the petitioner's borderline mental retardation and other serious psychiatric illnesses, but only after finding actual prejudice under Strickland). We have insisted upon a showing of actual prejudice where counsel has failed to object to the prosecution's blatant misstatements of law or its use of peremptory challenges to strike each and every prospective black juror. See Cox v.

15

McNeil, 638 F.3d 1356, 1361–67 (11th Cir. 2011) (rejecting a claim that counsel was ineffective for failing to object to the prosecution's "clear misstatements of [Florida] law" that the jury was required to recommend the death penalty if the aggravating circumstances outweighed the mitigating ones because the petitioner had not demonstrated actual prejudice under Strickland); Baldwin v. Johnson, 152 F.3d 1304, 1315–16 (11th Cir. 1998) (holding that counsel's failure to challenge the prosecution's use of peremptory strikes to remove all black jurors, even if constitutionally deficient, was not prejudicial under Strickland in light of the overwhelming evidence of guilt).  We have insisted upon a showing of actual prejudice where counsel pursued an admittedly "invalid" and legally unfounded defense to a capital murder charge.  See Duren v. Hopper, 161 F.3d 655, 660 (11th Cir. 1998) (holding that counsel's argument that the defendant did not intentionally kill the victim because he was aiming his gun at a nearby person, which ran counter to the fundamental doctrine of transferred intent, was not constitutionally ineffective because the defendant could not show actual prejudice under Strickland "[i]n light of the overpowering evidence of [] guilt").  And we have even insisted upon a showing of actual prejudice where counsel has failed to object to structural error at trial.  See Purvis v. Crosby, 451 F.3d 734, 740–43 (11th Cir. 2006) (holding that a petitioner claiming that counsel was ineffective for failing to object to the partial closure of the courtroom during the victim's testimony, a structural

16

error implicating the Sixth Amendment right to a public trial, must still prove prejudice under Strickland).

Allowing an attorney's failure to object to a constitutional or otherwise important error to warrant a presumption of prejudice would run counter to a wall of binding precedent from Strickland forward; it would obliterate the complete-denial and total-failure elements of Cronic's first two exceptions; and it would significantly stretch Cronic's deliberately narrow exceptions to swallow Strickland's general rule.  See Nixon, 543 U.S. at 179, 189–90, 125 S.Ct. at 555, 561–62; Cone, 535 U.S. at 695–97, 122 S.Ct. at 1851; Purvis, 451 F.3d at 740–43. All performance-deficient failures to object to error are, in some sense, the denial of assistance of counsel at a specific point in time, and almost always occur during some critical stage of the trial, such as the trial itself.  Yet, those failures are the unexceptional circumstances to which Strickland applies, not the exceptional ones to which Cronic applies.

Castillo and the district court have made much of our decision in Harding. Too much, we think.  That case involved a defendant who was not properly advised of his right to self-representation under Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525 (1975), and, as a result of a disagreement with his court-appointed attorney, he was effectively left without representation throughout his trial. Harding, 878 F.2d at 1342–44.  The defendant's attorney "remained silent through

17

virtually the entire trial, except for various remarks indicating that Harding did not desire his assistance," and he "did nothing to fulfill the obligations of his position as counsel." Id. at 1343–44. The attorney did not make an opening statement, he did not examine or cross-examine any witness, he did not make a single objection, and he did not utter a word when the trial judge directed a guilty verdict against the defendant, which was a blatant violation of his client's Sixth Amendment right to a jury trial. Id. at 1342–43. We reached the obvious conclusion: under those circumstances prejudice should be presumed under Cronic. Id. at 1345.

Statements in the Harding opinion go beyond the facts necessary to decide that case. Prejudice was clearly due to be presumed because in Harding "counsel entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." Cronic, 466 U.S. at 659, 104 S.Ct. at 2047. That's the second Cronic exception, and it covers the facts of the Harding case where counsel did nothing at all to subject the prosecution's case to any kind of testing. He could not have done less. The second exception could not have fit better.

After identifying Cronic's first two exceptions to the requirement of proving actual prejudice, however, the Harding opinion says that "silence of counsel may constitute denial of counsel at a critical stage of trial and thus constitutional error even without a showing of prejudice." Id. at 1345. It then states:

18

> [Counsel] was silent throughout virtually the entire trial, but most
> crucially, he remained silent as the judge directed a verdict against his
> criminal defendant client.  We hold that his silence at the point the
> verdict was directed against his client was so likely to prejudice
> Harding that the cost of litigating its effect is unjustified and prejudice
> is presumed.

Id.  Those statements, Castillo insists and the district court believed, constitute a holding in favor of her position that an attorney's failure to object to a single error, if the error is big enough, can constitute an extraordinary circumstance justifying a presumption of prejudice under Cronic.  Of course, standing by while the judge directs a verdict against your client in a criminal case is about as big an error as an attorney can commit.  The failure to notice and object to a juror who missed hearing some of the prosecution's evidence taking part in deliberations and voting on the verdict pales by comparison.

More fundamentally, because those statements in the Harding opinion are not necessary to the result in that case, the facts of which involved the complete failure of counsel to subject the prosecution's case to any kind of testing at any point, they are not the holding of the decision.  The distinction between statements in an opinion and the holding of a decision is a not a novel one:

> We have pointed out many times that regardless of what a court says
> in its opinion, the decision can hold nothing beyond the facts of that
> case.  E.g., Watts v. BellSouth Telecomms., Inc., 316 F.3d 1203, 1207

19

(11th Cir. 2003) ("Whatever their opinions say, judicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision." (quotation marks omitted)). All statements that go beyond the facts of the case — and sometimes, but not always, they begin with the word "if" — are dicta. See, e.g., United States v. Eggersdorf, 126 F.3d 1318, 1322 n.4 (11th Cir. 1997) ("[L]anguage in . . . [an opinion] not necessary to deciding the case then before us" is dicta); Moon v. Head, 285 F.3d 1301, 1318 (11th Cir. 2002) (Carnes, J., concurring) ("Those statements are dicta. They are dicta because they go beyond the facts of the [earlier] case itself . . . ."). And dicta is not binding on anyone for any purpose. See, e.g., McNely v. Ocala Star–Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996) ("[W]e are not required to follow dicta contained in our own precedents . . . ."); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575, 1578 (11th Cir. 1992) (because what is said in a prior opinion about a question not presented there is dicta, and dicta is not binding precedent, a later panel is "free to give that question fresh consideration").

Edwards v. Prime, Inc., 602 F.3d 1276, 1298 (11th Cir. 2010); see also United States v. Hunter, 172 F.3d 1307, 1310 (11th Cir. 1999) (Carnes, J., concurring) ("The holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision.").

20

We look to the facts of the Harding case to frame the holding of that decision. The holding, and the only holding, is that under those total-failure-throughout facts prejudice is presumed. Unlike the attorney in Harding, Castillo's counsel did not remain silent throughout the trial, he did not utterly fail to fulfill any of his obligations as counsel, he was not as good as absent throughout the trial, and he did not stand silently by as the court directed a verdict against his client. Because the facts are so different, the holding of Harding, as framed by its facts, does not apply to this case.

Of course, dicta can be considered for whatever persuasive value it may have. But to the extent that the dicta in Harding means, as Castillo argues, that prejudice may be presumed whenever counsel fails to object to a single constitutional error, we find it anything but persuasive. That proposition is contrary not only to Cronic but also to the Supreme Court's more recent pronouncements on the exceedingly narrow scope of the Cronic exceptions. See Cone, 535 U.S. at 697, 122 S.Ct. at 1851. We are bound to follow the Supreme Court's instructions on the matter instead of the implications of any dicta in the Harding opinion.

Castillo also makes a resourceful fallback argument. She contends that even if, as we are holding, Cronic does not apply in these circumstances, prejudice should still be presumed under Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029

21

(2000). In that case defense counsel neglected to file a notice of appeal after allegedly promising a convicted defendant that she would do so. Roe, 528 U.S. at 474, 120 S.Ct. at 1033. The Supreme Court held that Strickland's two-part test applies to claims that counsel was ineffective for failing to file a notice of appeal, though it adopted a modified version of Strickland's prejudice inquiry in light of the "unusual" circumstances of such cases. Id. at 477, 483–84, 120 S.Ct. at 1034, 1038. The Court explained that where a "claim of ineffective assistance of counsel involves counsel's performance during the course of a legal proceeding," a defendant must demonstrate a reasonable probability of a different result to satisfy Strickland. Id. at 481–82, 120 S.Ct. at 1037 (emphasis added).

As the Court emphasized, however, the facts of Roe's case were "unusual in that counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself" and that the "denial of [an] entire judicial proceeding itself . . . demands a presumption of prejudice." Id. at 483, 120 S.Ct. at 1038. The Court nonetheless declined to adopt a "per se prejudice rule" that dispensed with the "critical requirement that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal," and thus held that a defendant asserting such a claim "must demonstrate that there is a reasonable probability that, but for counsel's

22

deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484, 120 S.Ct. at 1038.

Castillo attempts to analogize her case to Roe, arguing that just as a counsel's failure to file a notice of appeal justifies a presumption of prejudice because it denies the defendant the right to an appeal, her counsel's failure to object to the juror's participation in deliberations and the verdict "led to [her] forfeiture altogether of a 'jury trial' proceeding" that comports with the Sixth Amendment right to be tried before six jurors who heard all of the evidence. That argument proves too much. The failure to make a valid objection to a constitutional error of any type deprives the defendant of a trial or sentencing that comports with some constitutional right. As we have previously explained, however, it cannot be that prejudice is presumed in every such situation.

This case is not analogous to Roe. An appeal is a critical stage of a criminal proceeding against a defendant and an attorney's failure to file a notice of appeal, after promising do so, deprives a defendant of that entire stage of the criminal process. Failing to object to a particular juror serving on a jury does not deprive a defendant of a jury trial. It may deprive a defendant of a jury trial free from error, but that presents a garden variety Strickland issue, which is an altogether different situation. Roe itself recognized that where a "claim of ineffective assistance of counsel involves counsel's performance during the course of a legal proceeding,"

23

the petitioner must demonstrate that there was a reasonable probability of a different trial outcome absent counsel's error.  Id. at 481–82, 120 S.Ct. at 1037; see also Strickland, 466 U.S. at 694–95, 104 S.Ct. at 2068–69.  That is the type of claim Castillo has, and that is the type of showing she has failed to make.  She does not contend that she has shown, or can show, actual prejudice within the meaning of Strickland.

## IV.

Because Castillo's claim of ineffective assistance of counsel does not fit within the narrow bounds of Cronic or Roe, and she has failed to demonstrate actual prejudice under Strickland, she is not entitled to federal habeas relief on her claim.  The district court's grant of the writ is reversed and the case is remanded for the district court to enter judgment denying the petition and to vacate any orders that led the State to release Castillo from her sentence.

**REVERSED AND REMANDED.**

RESTANI, Judge, concurring:

I write separately to clarify the facts of this case, as I find it unnecessary to reach the difficult legal issues[1] raised by Castillo's habeas petition. The record demonstrates that the facts assumed by the majority likely do not reflect what actually transpired at Castillo's trial. The district court erred in its deferential analysis of the state court's factual determination, and we should resolve that error and reverse.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets out a highly deferential standard for federal courts to use when evaluating state court judgments. See 28 U.S.C. § 2254(d) (2006); Jamerson v. Sec'y for the Dep't of Corr., 410 F.3d 682, 687 (11th Cir. 2005). Habeas relief may be granted only if a state court's decision "(1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme

---

[1] Of some concern is whether we should view this case through the lens of Strickland and Cronic at all. Although Castillo's habeas petition is styled as a claim of ineffective assistance of counsel, the state habeas court did not examine the claim expressly under an ineffective assistance analysis. Instead, the state court appears to have directly addressed the alleged underlying constitutional error at trial, the deprivation of a trial by a constitutionally-required, six-person jury. Setting aside waiver issues, one approach here may be to review Castillo's claim on the merits of the first-level federal claim. See Adkins v. Warden, 710 F.3d 1241, 1249 (11th Cir. 2013) (recognizing it is within the discretion of the state court to decide collateral federal claims on the merits or on the basis of an independent and adequate state procedural bar). Additionally, while we likely are bound by our decision in Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006), I note that its view of Cronic has not been universally adopted by our sister circuits. See, e.g., United States v. Withers, 638 F.3d 1055, 1067–68 (9th Cir. 2011) (collecting cases from various circuits and suggesting but not deciding that the circuit's jurisprudence aligns with the circuits that have presumed prejudice from structural error); Owens v. United States, 483 F.3d 48, 65–66 n.14 (1st Cir. 2007) (disagreeing expressly with Purvis). I would not reach these questions given the bizarre history of this case.

Court of the United States" or the decision "(2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d). In this case, the parties dispute a determination of fact by the state court: when, if ever, Juror Caldwell was absent. Accordingly, our review is pursuant to § 2254(d)(2).

Under this provision, a federal habeas court "generally defer[s] to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence." Adkins, 710 F.3d at 1249 (quoting Jones v. Walker, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc)); see also 28 U.S.C. § 2254(e)(1). If the facts upon which the state court based its determination are found to be unreasonable in light of the record evidence, however, AEDPA deference no longer applies, and we review the claim de novo. Adkins, 710 F.3d at 1250 (citing McGahee v. Ala. Dep't of Corr., 560 F.3d 1252, 1266 (11th Cir. 2009)).

In this case, the district court improperly applied AEDPA deference, bifurcating the question of Juror Caldwell's presence into two distinct factual questions: 1) whether Juror Caldwell was ever absent from trial, and 2) whether Juror Caldwell returned to participate in deliberations. [2] In reality, this was a single

---

[2] As a result of this error, the district court conducted a de novo review of the record as to the first question, but it deferred to the state court on the second question in light of an inconclusive record.

26

factual determination, and the state court treated it as one, holding simply, "With respect to Juror [Caldwell], the record reflects that the Judge acknowledged her presence in the morning and that same afternoon for deliberation. No evidence [exists] that Juror [Caldwell] was absent for any part of trial or testimony or deliberation." All parties now agree, and the district court so found, that this factual determination was clearly erroneous.[3] The record contains multiple references to Juror Caldwell's absence. Specifically, the trial court judge and attorneys discussed Juror Caldwell's absence prior to the second day of trial, and Castillo's attorney unsuccessfully objected to proceeding with an alternate juror. Additionally, the trial court judge noted on day two that all <u>seven</u> jurors were present (the five original jurors, excluding Juror Caldwell, and both alternates). The trial court judge also relayed to the other jurors on the morning of day three the reasons for Juror Caldwell's absence the previous day, doing so in a manner consistent with her continued absence from the proceedings. Finally, Juror Caldwell's name was scratched from the juror roster as of the second day of trial, with no subsequent amendments. As the record is replete with evidence contradicting the state habeas court's factual determination, we should review the

---

[3] Typically, we are hesitant to permit a party to reverse its argument completely as to a factual dispute, as the state did here. It initially argued that Juror Caldwell was never absent from trial, and yet now it argues that she left and never returned. This rule is exercised within the sound discretion of the court, of course, and where such a change in position appears well-supported by the record and at least partially in line with the arguments of the opposing party, we should consider it.

entire factual question of Juror Caldwell's absence de novo.  See Adkins, 710 F.3d at 1250.  As a result of its improper application of the standard of review, the district court perpetuated the state court's unreasonable determination of fact.

When reviewing de novo the intertwined question of whether Juror Caldwell returned to deliberate, I conclude we easily could and should find that Juror Caldwell did not deliberate.  In addition to the evidence above that Juror Caldwell was absent on day two and at least part of day three, additional evidence contemporaneous with the jury deliberations undermines the conclusion that she returned.  Just prior to sending the jury to deliberate, the trial court judge noted the presence of "the alternate," whom she identified as Juror Clark, the second of two alternates.  The trial court judge expressly indicated that Juror Clark would not deliberate and would soon be excused.  In contrast, no mention of the first alternate juror was made.  In line with this discussion, the clerk's notes reference the dismissal of the second alternate juror, but not the first.  After polling the jury following deliberations, the trial court judge offered certificates of appreciation.  She called out each juror by name but notably omitted Juror Caldwell's name.  This evidence, in addition to the likelihood that someone—the prosecution, defense attorney, or trial court judge—would have mentioned, on the record, the sudden reappearance of Juror Caldwell, is balanced against a single line of the mistake-ridden transcript in which Juror Caldwell purportedly answers the jury

28

poll in the affirmative.  Even in this instance, however, the transcript reveals that two jurors apparently responded to Juror Caldwell's name being called, Juror Caldwell and Juror Reilly, although Juror Reilly apparently had voted already when her name was called.  In light of these circumstances, I conclude that the record reflects that Juror Caldwell never participated in any aspect of the trial after day one.  As a result, Castillo's habeas claim is without merit, and her habeas petition should have been denied.