**NOT FOR PUBLICATION**

# In the
# United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 23-11033

————————————

KENARD SINGH,

*Petitioner-Appellant,*

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

*Respondents-Appellees.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:19-cv-00617-RBD-PRL

————————————

Before NEWSOM, BRASHER, Circuit Judges, and HUCK,* District
Judge.

————————————

* Honorable Paul Huck, Senior United States District Judge for the Southern
District of Florida, sitting by designation.

PER CURIAM:

Kenard Singh, a state prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. He argues that the performance of his attorney, Jack Maro, at his hearing on the motion to vacate his plea and sentence, was so deficient that it wasn't just ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984)—it was no assistance at all under *United States v. Cronic*, 466 U.S. 648 (1984). The distinction matters because *Strickland* requires the petitioner to show that counsel's performance actually prejudiced him; when *Cronic* applies, prejudice is presumed.

The state court applied *Strickland* and found that Maro's representation wasn't ineffective, and thus denied Singh's motion for postconviction relief. Singh argues that *Strickland* doesn't apply, and that he is entitled to a presumption of prejudice under *Cronic*, because his attorney entirely failed to oppose the state's case alleging noncompliance with his plea agreement.

We affirm the denial of Singh's petition under the "highly deferential standards" that apply when federal courts review state-court decisions under § 2254. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1034 (11th Cir. 2022) (en banc) (citation modified).

**I**

**A**

Singh was charged in Florida state court with first-degree felony murder for the death of Douglas Tripp, arising out of an

attempted home-invasion robbery at Tripp's home on the night of March 8, 2022.

Seven months later, Singh gave a proffer—a sworn statement to the prosecutor—detailing the events that occurred the day of the killing. According to Singh, he, Brenton Crabtree, and Keith Crabtree drove to Tripp's house to rob him. On the way there, Singh saw Brenton load a black semiautomatic pistol with bullets in the rear passenger seat of the car and put the gun in his waistband. When they arrived, Brenton tried to lure Tripp outside, first by throwing a rock at a car window and then by throwing a pail at the front door. Singh next saw Brenton looking through an open window and, moments later, heard multiple gunshots. Brenton later said he shot Tripp because Tripp saw him and looked angry.

Five months after the proffer, Singh entered into a plea agreement to a reduced charge of second-degree murder and a 21-year sentence. In exchange, Singh promised to testify truthfully at any proceeding against Brenton "consistent with [his] sworn proffered testimony." The plea was accepted, and Singh was sentenced to 21 years in prison.

Two months later, Singh testified at Brenton's trial as required by his plea agreement. Singh's in-court testimony departed from his proffer in two ways. First, Singh repeatedly denied seeing Brenton load a gun in the car before arriving at Tripp's house, or seeing bullets at all, even after being confronted with his contrary statements in the proffer. Second, he denied *seeing* Brenton throw

a rock at a car window, though he admitted to *hearing* it happen. The jury nevertheless convicted Brenton.

## B

Because of Singh's inconsistent testimony, the state moved to vacate either his sentence alone or both his guilty plea and sentence together. The state notified Singh's private defense attorney, Jack Maro, of the hearing on this motion. But a few days earlier, Maro had filed a notice of nonrepresentation with the court, stating that his representation had terminated because the time to appeal Singh's conviction and sentence had expired.

At the hearing on the motion to vacate, the trial judge noticed Maro sitting in the audience and asked, "Are you not his counsel?" Maro replied, "No, sir. Judge, I filed a notice with the court." Motion to Vacate Hr'g Tr. at 3. Maro explained that "Singh [was] no longer [his] responsibility" because Singh's sentencing had concluded and the time to appeal his sentence had expired. *Id.* The judge was unconvinced that Maro could end his representation of Singh so easily. If Singh's plea required him to testify truthfully on the penalty that it could be "undone," then, the judge asked Maro, "why wouldn't it be appropriate for the counsel who [was] part of the negotiated plea[] to remain until that portion is resolved?" *Id.* at 5–6. Maro explained that he had a "conflict" with Singh, who hadn't paid him. *Id.* at 6. The judge rejoined that Maro's conflict with Singh was "unrelated to th[e] State's present motion." *Id.* at 12. Stressing that he wanted to "resolv[e] the motion today," the

judge ultimately ordered Maro to "stay for today" and represent Singh at the hearing.  *Id*. at 11–12.

During this conversation with Maro, the judge emphasized that he had a "visceral reaction" to Singh's testimony, that it was "fundamentally apparent" that Singh hadn't even tried to comply with the plea agreement.  *Id*. at 10.  "[A]t the proffer . . . [Singh] said, I saw the gun, I saw the guy load the gun, and then when he was at the trial, what gun, what gun, you know."  *Id*. The judge continued that the state might be "better off just rolling the dice and having this guy go to prison for life if he gets convicted. . . ." *Id*.

After it was decided that Maro would represent Singh, the state presented its motion to vacate Singh's sentence alone or both his plea and sentence.  It identified the two contradictions between Singh's proffer and his trial testimony, and it played the audio of a post-trial jail call in which Singh purportedly said:  "I tried to help him but it didn't work. . . . I said I didn't see him kill nobody.  I said, um, I didn't see no gun.  I never seen him load up no bullets, none of that shit."  *Id*. at 15.  On the call, Singh also said that, if asked to testify again, "I'm gonna say I don't remember nothing."  *Id*. at 16.

The trial judge asked the parties to clarify what its options were if it granted the motion to vacate.  The state cited *Metellus v. State*, 900 So. 2d 491 (Fla. 2005), for the proposition that the court could vacate Singh's sentence and resentence him for second-degree murder, for up to life in prison.  Or, the state continued, the court could vacate Singh's plea *and* sentence and retry him for first-

degree felony murder.  The state expressed its preference for the first option.

In response, Maro cited a case with a slightly "different spin," *Forsythe v. State*, 840 So. 2d 440, 442 (Fla. Dist. Ct. App. 2003), to show that "the state ha[d] the option of withdrawing from the agreement, and either going to trial or seeking a new agreement." Motion to Vacate Hr'g Tr. at 21.

Regarding the state's allegations, Maro admitted that he "didn't sit through the trial" and said—

> [I]t's more of a factual determination, you know, you're going to have to make.  Are they of such a nature . . . that it undermined the intent of the plea agreement and basically . . . torpedo[ed] the State's case in chief substantially and if you believe that it did, and obviously, you've just ruled accordingly.  I mean, there's not much else I can say to you as far as that's concerned.

*Id.* at 25–26.  Maro then returned to discussing Singh's options, recognizing that if Singh "maintain[s] his guilty plea," it would expose him to a life sentence immediately.  *Id.* at 27–28.  Maro suggested that the court appoint a public defender:  "Maybe he [would] best be served with a new set of eyes on this. . . . I think it would [be] appropriate maybe to appoint the public defender."  *Id.* at 29.

Ultimately, the trial judge granted the state's motion and vacated both Singh's plea and sentence.  In the court's view, Singh showed a "completely unmitigated substantial noncompliance with the plea agreement," *id.* at 32, by "lying about critical issues

at trial," *id.* at 18. "He was trying to be probably as unclear as possible for anybody to hear as he was talking, as opposed to speaking up like an adult so people could hear him." *Id.* at 30–31. "So he wants to be stupid and make those calls," the judge said, "I'll help him be stupid." *Id.* at 31. Though Singh could try renegotiating with the state, the judge warned: "It will never be 21 years again. Never. I mean, there's no point in rewarding somebody for the behavior they just did." *Id.* at 32. "That was absolutely absurd what [he] did." *Id.* "[I]t was beyond belief to sit and listen to him. . . . [A]ll he had to do was just do the right thing and he would have been on his way." *Id.* at 33. The court also appointed Singh a public defender, who moved to reconsider the order vacating Singh's plea and sentence. The trial court denied the motion, and Singh headed to trial.

A few weeks before his trial, the state offered a plea offer of 35 years in prison—but Singh rejected it. At trial, the jury found him guilty of first-degree felony murder, and the court sentenced him to mandatory life imprisonment. The Fifth District Court of Appeal affirmed the judgment in a summary per curiam opinion.

## C

Singh timely filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. As relevant here, Singh asserted that Maro provided ineffective assistance by failing to subject the state's case to meaningful adversarial testing at the hearing on the motion to vacate Singh's plea and sentence, citing both *Strickland* and *Cronic*.

At the corresponding evidentiary hearing, Singh testified that after securing the plea, Maro essentially stopped communicating with him and didn't help him prepare for Brenton's trial. And when Maro was forced to act as Singh's attorney at the motion-to-vacate hearing, Maro and Singh had no conversation with each other or any opportunity to discuss the facts or Singh's options. Singh did, however, admit to making the jail call.

Maro testified in response that, in his view, Singh's sentencing on the plea agreement—before Brenton's trial—essentially "finished the case." Evidentiary Hr'g Tr. at 82. All Singh had to do was "just step up and say what he said in the proffer," so Maro thought his legal responsibilities were "over" before the hearing happened. *Id*. at 82–83. Maro arrived at the hearing intending just to "bear witness[] to the plea, the proffer, and the sentencing," so he sat in the audience and not at the counsel table. *Id*. at 83. Because Maro didn't believe he was Singh's lawyer, he didn't sit through Brenton's trial and "didn't have a clue" about Singh's alleged violation of his plea agreement. *Id*. at 84. But after a colloquy with the trial judge, it became "very clear" that the judge "was going forward" with the hearing and wanted Maro to represent Singh. *Id*. Having been pressed into service, Maro believed the "best option" was for the judge to allow Singh to withdraw his plea, "letting [the prosecutor] and the defense renegotiate" a plea for the judge's approval. *Id*. at 87.

The state postconviction court denied Singh's postconviction motion. The court applied *Strickland* and found that Singh had

demonstrated neither "error [n]or prejudice." State Ct. Order on R. 3.850 Mot. at 4. The court reasoned that Maro had "correct[ly]" anticipated that it was better for Singh to attempt to renegotiate a plea with the prosecutor—who did later offer a plea deal for 35 years—than to "simply agree to resentencing when the Defendant would be exposed to a life sentence" before a "clearly displeased judge." *Id.* at 5–6, 8. On appeal, the Fifth District Court of Appeal affirmed the postconviction court's ruling in a summary per curiam order.

Singh timely petitioned for habeas corpus relief in federal court under 28 U.S.C. § 2254. He argued in relevant part that the state postconviction court erred in applying *Strickland* rather than *Cronic*. The district court denied the petition, concluding that the Supreme Court had not "squarely addresse[d]" this issue or "clearly establishe[d] that *Cronic* should replace *Strickland* in this factual context." Dist. Ct. Order at 22. Thus, the court held, "it cannot be said that the state court unreasonably applied clearly established federal law." *Id.* at 23 (citation modified). This is Singh's appeal of the denial of his habeas petition.

## II

We review the district court's denial of a state prisoner's § 2254 petition de novo. *See Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010). But we review the state habeas court's decision with deference, granting relief only if its adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if a state court (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court decision is an "unreasonable application of" Supreme Court precedent only if it is "objectively unreasonable," not just incorrect. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). To obtain relief, the petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## III

### A

"A petitioner asserting a claim of ineffective assistance of counsel ordinarily must satisfy the requirements of *Strickland*." *Castillo v. Fla., Sec'y of Dep't of Corr.*, 722 F.3d 1281, 1286 (11th Cir. 2013). This means that he "must affirmatively prove *both* deficient performance *and* actual prejudice." *Id.* (emphasis added). To show actual prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Supreme Court has recognized, however, that certain circumstances "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658. Prejudice is presumed when—but only when—either "(1) there is a complete denial of counsel at a critical stage of the trial, (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or (3) it is so unlikely that counsel could have performed as an effective adversary that the trial is "inherently unfair." *Castillo,* 722 F.3d at 1286 (citation modified) (quoting *Cronic*, 466 U.S. at 659–61). *Cronic* applies only to "a very narrow spectrum of cases," when counsel is so ineffective "that the defendant [i]s in effect denied any meaningful assistance at all." *Stano v. Dugger*, 921 F.2d 1125, 1153 (11th Cir. 1991) (en banc). "Consequently, the burden of proof under *Cronic* is a very heavy one." *Id*. (citation modified). "If an attorney is present and contests the prosecution's case, any errors he commits are to be judged under the *Strickland* standard, which requires a showing of actual prejudice." *Castillo*, 722 F.3d at 1288.

Singh relies on *Cronic*'s second exception, arguing that Maro "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. Under this exception, "the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). It's "reserved for situations in which counsel has '*entirely failed* to function as the client's advocate' by failing to meaningfully oppose the prosecution's case." *Castillo*, 722 F.3d at 1287 (emphasis in original) (quoting *Florida v. Nixon*, 543 U.S. 175, 179, 189 (2004)).

Two Supreme Court decisions—*Bell v. Cone*, 535 U.S. 685 (2002), and *Florida v. Nixon*, 543 U.S. 175 (2004)—clarify the scope of *Cronic*'s second exception.

In *Bell*, a capital defendant's counsel failed to introduce mitigating evidence and waived closing argument at the sentencing hearing, which resulted in a death sentence for his client. 535 U.S. at 691, 696. But because counsel had argued for life imprisonment (instead of death) in his opening argument, contending that his client was mentally unwell, addicted to drugs, and felt remorse for his actions, the Court deemed this insufficient to trigger *Cronic*. *Id*. at 701–02. It wasn't a *complete* failure, the Court reasoned, because counsel had failed to oppose the prosecution only "at specific points," rather than "throughout the . . . proceeding as a whole." *Id*. at 697.

In *Nixon*, the Court held that *Cronic* didn't apply where trial counsel, without the defendant's consent, conceded that the defendant was guilty of capital murder as part of his strategy to avoid a death sentence. 543 U.S. at 190–92. Because "[a]ttorneys representing capital defendants face daunting challenges in developing trial strategies, not least because the defendant's guilt is often clear," the Court concluded that it can be reasonable for counsel to simply try to avoid execution by "persuad[ing] the trier that his client's life should be spared." *Id*. at 191. "Counsel cannot be deemed ineffective for . . . his unwillingness to engage in 'a useless charade.'" *Id*. at 192 (quoting *Cronic*, 466 U.S. at 656 n.19).

**B**

Although it's a close call whether the state court was correct to apply *Strickland* instead of *Cronic*,[1] it wasn't unreasonable for the court to do so.  Therefore, we affirm the district court's denial of Singh's § 2254 petition.

On the one hand, when Singh was facing the unraveling of his guilty plea and 21-year sentence as well as the possibility of life in prison, Maro was sitting in the audience and insisting that he wasn't Singh's lawyer.  Maro wasn't prepared for the hearing, hadn't investigated any potential defenses, and hadn't consulted with Singh in anticipation of the hearing.  And when pressed into service, Maro "piggy-backed onto the State's position" and didn't challenge its version of the facts.  Appellant's Br. at 30.  He "didn't have a clue" whether Singh had complied with the plea agreement because he didn't sit through Brenton's trial.  Evidentiary Hr'g Tr. at 84.  He merely described the issue of noncompliance as a "factual determination" and stated "there's not much else I can say."  Motion to Vacate Hr'g Tr. at 26.  He didn't make "any substantive comment" until "two-thirds of the way through the hearing," Appellant's Br. at 32, effectively conceding Singh's violation and focusing exclusively on whether "to vacate just the sentence, or to vacate the plea and sentence," *id.* at 33.

---

[1] Under *Wilson v. Sellers*, we "look through" the state appellate court's summary per curiam affirmance to the state postconviction court's reasoning.  584 U.S. 122, 125 (2018).

On the other hand, it's not clear that Maro's advocacy rises—or falls—to the level of a "complete" failure, as *Cronic* requires. *See Bell*, 535 U.S. at 697. First, Maro did cite a different case than did the government to argue for vacating both Singh's plea and sentence, not just his sentence as the government preferred. This distinction is nontrivial because vacating just the sentence would have immediately exposed Singh to a life sentence before a "clearly displeased" judge. In so doing, Maro provided some assistance—during at least a portion of the hearing—suggesting that his failures were "at specific points" rather than throughout the "proceeding as a whole." *See id.* Second, as the state postconviction court pointed out, the trial judge was predisposed to find that Singh had violated the plea agreement for "lying about critical issues at trial." Motion to Vacate Hr'g Tr. at 18; *see id.* at 10 (expressing the trial judge's "visceral reaction" to Singh's testimony); *id.* (stating that it was "fundamentally apparent" that Singh didn't try to comply with the plea agreement). Faced with these comments, Maro reasonably could have concluded that it would be "a useless charade" to challenge the judge's own assessment of the trial testimony. *See Nixon*, 543 U.S. at 192. Therefore, it could well have been strategic to concede Singh's violation and use the rest of the time to persuade the judge to vacate both the plea and sentence— as Maro did.

Thus, there is at the very least the possibility of "fairminded disagreement" over whether *Cronic* was the correct standard. *See Harrington*, 562 U.S. at 103. Even if it was incorrect to apply *Strickland*, the state court's decision to do so was not "objectively

unreasonable." *See Lockyer*, 538 U.S. at 75. Furthermore, the state court's decision wasn't contrary to clearly established federal law because no Supreme Court decision had "squarely addresse[d]" this issue or "clearly establishe[d] that *Cronic* should replace *Strickland* in this novel factual context." *Wright v. Van Patten*, 552 U.S. 120, 125 (2008). Therefore, under § 2254, we defer to the state court's application of *Strickland* and hold that the district court properly denied Singh's habeas petition.

**AFFIRMED.**